2011 VT 17

**Scott ANDERSON and Virginia Anderson v. Barbara Langrehr JOHNSON, Barbara Schoenberg, Berg, Carmolli & Kent Real Estate d/b/a Berg, Carmolli & Kent Realty and S & S Gagnon d/b/a Potvin Real Estate**

[19 A.3d 86]

No. 09-102

¶ 1. January 31, 2011. Defendant Berg, Carmolli & Kent Realty (BCK) appeals

from a jury verdict finding it liable for violation of the Vermont Consumer Fraud Act but awarding no compensatory damages or other relief, as well as from an order granting attorney's fees to plaintiff homebuyers. BCK contends the finding of liability was predicated upon several trial court errors, and that the court erred in awarding attorney's fees. We conclude that the award of attorney's fees was erroneous in this case, where the verdict granted plaintiffs no relief, vindicated no significant legal rights, and advanced no broader policy interests. Our conclusion renders it unnecessary to address BCK's remaining claims.

¶ 2. The essential facts may be briefly summarized. In April 2005, plaintiffs purchased a single-family home on a 2.38-acre parcel located in the Town of Barre.[1] Plaintiffs later sued the seller, seller's realtor (BCK), and their own realtor for negligent misrepresentation and consumer fraud. The gist of the complaint was that seller's property information report failed to disclose that seller had subdivided the property in 2002 into two lots, the 2.38-acre parcel and house and a smaller 1.86-acre vacant lot which seller planned to retain; that an outdated deed and confusing tax map faxed by BCK to plaintiffs' realtor misled plaintiffs to believe that they were purchasing the entire undivided 4.24 acre parcel; that plaintiffs relied on these misrepresentations in offering to purchase the property for the listed sale price of $235,000; that plaintiffs were thereby deprived of the benefit of their bargain; and that they were entitled to compensatory damages, including the difference in value between the property they acquired and the value of the property with the boundaries as represented by defendants, as well as exemplary damages and attorney's fees. Plaintiffs ac-

knowledged that they learned about the actual size of the parcel they were purchasing prior to closing and chose to proceed nevertheless.

¶ 3. The issues were narrowed prior to trial. Plaintiffs settled with their realtor and stipulated to his dismissal. The trial court granted partial summary judgment in favor of the remaining defendants, dismissing the negligent-misrepresentation claim against seller and ruling that plaintiffs were precluded as a matter of law from obtaining compensatory damages from seller or BCK based upon the alleged difference in value between the property they actually purchased and the value of the combined lots. Given their awareness of the lot's actual size, the court ruled as a matter of law that plaintiffs could not have relied on defendants' alleged misrepresentations in ultimately purchasing the property. The court declined to dismiss the case in its entirety, however, ruling that other damages might be available to plaintiffs, including "statutory recission," i.e., the return of BCK's commission, or other relief authorized by the Consumer Fraud Act (CFA or Act). See 9 V.S.A. § 2461(b) (providing that any consumer who contracts for goods or services "in reliance upon false or fraudulent representations" or who "sustains damages" as a result "may sue for appropriate equitable relief and may sue and recover . . . the amount of his damages, or the consideration . . . given by the consumer, reasonable attorney's fees, and exemplary damages").

¶ 4. The case proceeded to trial, where, on the issue of damages, plaintiffs claimed that they would have offered only $200,000 — the assessed value of the 2.38-acre parcel in the town's grand list — had they known of its actual boundaries, and were therefore entitled to damages of $35,000, as well as the return of the BCK commission. Defendants countered that an appraisal of the property shortly before the closing revealed that its fair

---

[1] The property listing mistakenly advertised the property as consisting of 2.34 acres.

market value was slightly *more* than the $235,000 purchase price. The trial court instructed the jury that, if plaintiffs proved a violation of the CFA, they were entitled to recover monetary damages for any actual losses they suffered, restitution damages in the form of the BCK commission, as well as exemplary damages if the requisite malice were shown.

¶ 5. The jury responded to a set of special interrogatories, finding that plaintiffs had reasonably relied on material representations by BCK, that the representations were likely to be deceptive or misleading to the average reasonable consumer, and that they had influenced plaintiffs' decision to enter into the contract of sale. The jury also found, however, that plaintiffs had suffered no damages from their entry into the contract, and declined to award any damages for lost value or restitution.

¶ 6. Following the verdict, plaintiffs moved for an award of attorney's fees and expenses, which BCK vigorously opposed. The trial court ultimately issued a written decision, ruling that an award of attorney's fees is mandatory when a violation of the CFA has been found, even in the absence of actual damages. The court went on to find that the "lodestar" figure for plaintiffs' attorney's fees (reasonable hours billed multiplied by a reasonable hourly rate) plus "expenses" totaled $54,310.73, and approved an award for that amount, plus costs of $1871.80 under V.R.C.P. 54(g).[2] This appeal followed.[3]

¶ 7. BCK principally contends the trial court erred in awarding attorney's fees in light of the jury's failure to find any remedy or relief due to plaintiffs for the CFA violation. We review the claim against a considerable body of case law liberally construing the provisions of the Act in light of its remedial purposes. As we have explained, the CFA is designed not merely to compensate consumers for actual monetary losses resulting from fraudulent or deceptive practices in the marketplace, but more broadly "to protect citizens from unfair or deceptive acts" in commerce, *Christie v. Dalmig, Inc.*, 136 Vt. 597, 600, 396 A.2d 1385, 1387 (1979), and "to encourage a commercial environment highlighted by integrity and fairness." *Gramatan Home Investors Corp. v. Starling*, 143 Vt. 527, 536, 470 A.2d 1157, 1162 (1983). Accordingly, we have held that the remedies afforded by the Act, including in particular the award of reasonable attorney's fees, were fashioned to "encourage prosecution of individual consumer fraud claims" and that an award of such fees is thus mandated where a plaintiff has made a showing of fraud. *L'Esperance v. Benware*, 2003 VT 43, ¶ 27, 175 Vt. 292, 830 A.2d 675 (quotation omitted). Consistent with these policy goals, we have also held that an attorney's fee award under the Act need not be strictly "proportionate" to the plaintiff's actual damages, explaining that the legislative purpose of encouraging private claims would be "frustrated" if courts were required to measure an attorney's fee award against the often limited damages at stake in an individual consumer action. *Id.* ¶ 27; see also *Vastano v. Killington Valley Real Estate*, 2010 VT

---

[2] In addition to attorney's fees, plaintiffs sought what they labeled "litigation expenses" for copying, postage, travel, facsimile transmittals, expert expenses and the like, and the trial court awarded a total of $6,025.73 in this category. This amount plus the approved attorney's fees of $48,285 yielded a total award of $54,310.73.

[3] While the appeal was pending, plaintiffs moved to dismiss the appeal on the ground, among others, that defendants' docketing statement was untimely filed, in violation of a Court order. The filing of a docketing statement is not a jurisdictional prerequisite, and we deny the motion.

12, ¶ 9, 187 Vt. 628, 996 A.2d 170 (mem.) (upholding attorney's fee award of nearly $75,000 against realtor who failed to reveal monitoring of well for contamination and was ordered to disgorge $7,875 commission).

¶ 8. Because the CFA serves broad public interests and offers an array of remedies, including restitution and injunctive relief, this and other courts construing similar measures have concluded that a showing of actual monetary loss is generally not a precondition to an award of attorney's fees. See, e.g., *Kwon v Eaton*, 2010 VT 73, ¶ 16, 188 Vt. 623, 8 A.3d 1043 (mem.) (rejecting claim that tenants were not entitled to attorney's fees under landlord/tenant and consumer fraud acts where their damages were entirely offset by landlords' counterclaims, resulting in net judgment for landlords); *Greene v Stevens Gas Service*, 2004 VT 67, ¶ 13, 177 Vt. 90, 858 A.2d 238 (observing that damage action under CFA requires showing of "some cognizable injury caused by the alleged consumer fraud"); *Peabody v P.J.'s Auto Village, Inc.*, 153 Vt. 55, 58, 569 A.2d 460, 463 (1989) (holding that, where defendant car dealership failed to disclose that used car was "clipped" vehicle, i.e., the front of one car welded to the back of another, plaintiff suffered at least a loss of confidence in its condition and was entitled to damages and attorney's fees despite lack of evidence of mechanical problems or reduction in fair market value); see also *Star Fin. Servs., Inc. v Aastar Mortg. Corp.*, 89 F.3d 5, 15 (1st Cir. 1996) (construing Massachusetts consumer protection act and Massachusetts decisions to allow attorney's fees "not only when damages were awarded, but also where, as here, the prevailing plaintiff received injunctive relief only"); *Hanover Ins. Co. v Sutton*, 705 N.E.2d 279, 295 (Mass. App. Ct. 1999) (affirming attorney's fee award under state consumer protection act

where plaintiff obtained only nominal monetary damages but also "equitable relief" in the form of constructive trust and injunction); *Tallmadge v Aurora Chrysler Plymouth, Inc.*, 605 P.2d 1275, 1278 (Wash. Ct. App. 1979) (although trial court failed to award damages against dealer who fraudulently sold vehicle different from the one advertised, consumer was entitled to attorney's fees under consumer protection act where he was inconvenienced and deprived of the use and enjoyment of his property).

¶ 9. The question here, however, is whether plaintiffs may recover attorney's fees standing alone, where a jury has determined that they suffered no injury and were entitled to no relief of any kind, monetary, equitable or otherwise. Even in those jurisdictions like Vermont where an award of attorney's fees has been held to be mandatory, the plaintiff is generally required to have suffered some adverse effect or to have demonstrated some injury of a personal or public nature warranting some sort of relief, even if it is not monetary or measurable in nature. See, e.g., *Chapman v Katz*, 862 N.E.2d 735, 749 (Mass. 2007) (observing that, in order to recover attorney's fees under state unfair trade practices act, "the unfair or deceptive conduct must have had some adverse effect on the [plaintiffs], even if it is not quantifiable in dollars" (quotation omitted)). Thus, as the Supreme Judicial Court of Massachusetts held, where a jury found that the plaintiffs "suffered no injury or loss," there was no basis for an award of attorney's fees despite the jury's finding of an unfair trade practice. *Id.*; see also *Tibbetts v Sight 'n Sound Appliance Ctrs., Inc.*, 2003 OK 72, ¶¶ 1, 23, 77 P.3d 1042 (holding that, despite jury verdict that defendants violated consumer protection act, plaintiffs were not entitled to attorney's fee award where jury awarded "zero damages" and plaintiffs otherwise failed to obtain "some judgment or judi-

cial decree that has changed the relationship between the parties so that defendant is judicially required to do something, i.e., some enforceable judgment"). Without some wrong to right as a predicate to a CFA award of attorney's fees, plaintiffs' theory of recovery and the superior court's award of fees turn on consumer fraud in the abstract, with no actual consumer protection at stake, and risks conversion of the CFA into a lawyer's relief act.

¶ 10. This is not to say that an award of attorney's fees is inappropriate where it would otherwise promote the Act's underlying goals. Again, our prior decisions are instructive. In reviewing attorney's fee awards under the CFA, we have looked to a variety of factors identified by the United States Supreme Court in the civil rights context, including most critically "the results obtained in the litigation." *L'Esperance*, 2003 VT 43, ¶ 22 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). As Justice O'Connor explained, this factor is not limited to measuring "[t]he difference between the amount recovered and the damages sought." *Farrar v. Hobby*, 506 U.S. 103, 121 (1992) (O'Connor, J., concurring).

¶ 11. Indeed, even where *no* damages or other relief is awarded, or merely nominal damages are awarded, the purpose of a statutory fee-shifting provision may be served where the plaintiff has prevailed on a significant legal issue or accomplished some broader "public purpose" underlying the legislation by exposing, for example, "lawless conduct" or deterring future misconduct. *Id.* at 121-22; see, e.g., *Garner v. Limbocker*, 770 S.W.2d 673, 674 (Ark. Ct. App. 1989) (where jury found that plaintiff had established pattern of excessive force by police officers but awarded no damages, trial court did not abuse discretion in awarding attorney's fees based on finding that plaintiff had "succeeded on a significant issue . . . involv[ing] community

interest as well as the rights of [plaintiff]"); *Simms v. Chaisson*, 890 A.2d 548, 557-58 (Conn. 2006) (affirming award of attorney's fees despite award of only nominal damages under Connecticut fair housing law where plaintiffs prevailed on a "significant legal issue" by vindicating their right to live without racial harassment and redressed defendants' "outrageous" misconduct); *McGrath v. Toys "R" Us, Inc.*, 821 N.E.2d 519, 527 (N.Y. 2004) (affirming attorney's fee award despite damage award of only one dollar under New York City human rights law where verdict vindicated substantial rights of historically unrecognized group, and would "educate the public" and "increase awareness" concerning rights of transsexuals).[4]

¶ 12. The case at bar fits none of these categories. Plaintiffs claimed that BCK was careless in providing confusing materials relating to the property's boundaries, but their suit exposed no "lawless" or unscrupulous misconduct, much less any broader pattern of socially irresponsible behavior likely to deceive or mislead the consumer. Plaintiffs claimed, and the record at most shows, that BCK committed a mistake that was later corrected and resulted in no harm to plaintiffs. Nothing in the case suggests that the verdict will serve to deter future misconduct, educate consumers or vendors, or promote a more honest and open marketplace. Plaintiffs'

---

[4] Awards of "nominal" damages of one dollar are common under the federal civil rights act, 42 U.S.C. § 1988, and some state enactments in order to render the plaintiff *eligible* for attorney's fees as the prevailing party, but as the United States Supreme Court has held, such an award does not *require* the court to grant attorney's fees where the judgment represents merely a "technical victory" and otherwise provides no substantive relief and vindicates no statutory policy. *Farrar*, 506 U.S. at 113-14.

suit, in short, yielded no relief to plaintiffs, vindicated no significant legal rights, and advanced no broader public goals.

¶ 13. Despite the technical statutory violation, plaintiffs were ultimately induced to purchase nothing less than, or different from, what they thought that they were purchasing, and the jury verdict — finding that they suffered no injury warranting any kind of relief — demonstrates that plaintiffs received essentially all that they deserved under the Act. On the singular facts presented, therefore, we conclude that the award of attorney's fees was erroneous. Our holding renders it unnecessary to address either BCK's additional claims of error at trial or plaintiffs' motion to dismiss those claims as untimely.[5]

*That portion of the judgment awarding plaintiffs attorney's fees is reversed.*

Motion for reargument denied February 25, 2011.

---

[5] Defendant sellers have also renewed their claim for attorney's fees and costs under a provision in the purchase and sale agreement entitling the prevailing party to attorney's fees in an action arising out of a "breach of this [c]ontract." The trial court rejected the claim, noting that plaintiffs' suit was not for breach of contract (indeed sellers performed the contract by closing on the sale) and that plaintiffs had prevailed on their consumer-fraud claim, although they had received no relief as a result. Sellers' summary argument on appeal does not show that the trial court erred in this regard, and we therefore find no basis to disturb its ruling.

Defendants have challenged on appeal only the award of attorney's fees. Accordingly, that portion of the judgment for litigation expenses ($6,025.73) and costs ($1,871.80) remains in effect.