2012 VT 31

**Sandra and Roger MONTGOMERY, Mary and Christopher Lintermann and Lorig and Sevan Yekhpairian, et al. v. 232511 INVESTMENTS, LTD. and Stowe Club Owners Association**

[49 A.3d 143]

No. 11-188

¶ 1. April 17, 2012. Defendant 232511 Investments, Ltd., the owner of a planned unit development in the Town of Stowe, appeals from separate superior court orders invalidating certain amendments to the development's declaration of covenants, conditions, and restrictions and awarding attorney's fees to plaintiffs, the owners of individual lots within the development. Defendant contends principally that the trial court erred in: (1) failing to dismiss the action on the basis of collateral estoppel; (2) finding that the amendments were unreasonable; and (3) granting plaintiffs' request for attorney's fees under the Common Interest Ownership Act and denying its request for attorney's fees under the declaration. We affirm.

¶ 2. This is the latest in a series of appeals arising from efforts by defendant, doing business as Stowe Highlands, to construct a number of additional single-family homes in its Stowe Club development in place of a previously planned resort hotel. In *In re 232511 Investments, Ltd.*, 2006 VT 27, 179 Vt. 409, 898 A.2d 109, we affirmed a decision of the environmental court denying Stowe Highlands' 2003 application to allow the construction under its current permit for a mixed-use Resort Planned Unit Development (Resort PUD), holding that it had to convert to a single-use Planned Residential Development (PRD) if, as we explained in a subsequent appeal, "it wanted to replace the proposed hotel that was to be the

centerpiece of the development" with single-family homes. *In re Stowe Highlands Resort PUD to PRD Application*, 2009 VT 76, ¶ 2, 186 Vt. 568, 980 A.2d 233 (mem.). We also held that "such application must include the entire 236-acre parcel" and not just the remaining undeveloped parcels, but declined to address — as premature — whether it "had sufficient control" of the development to apply for the conversion when a number of lots within the development had been sold to individual homeowners. *Id.*

¶ 3. Contemporaneous with its zoning application, Stowe Highlands filed an action for declaratory relief in the superior court against the Stowe Club Owners' Association and various individual homeowners, seeking a declaration that it was entitled to unilaterally amend the Declaration to add the so-called Tenth Supplement, which authorized it to develop individual homes instead of a hotel and to "convert the land to a PRD as opposed to a Resort PUD." The trial court dismissed the action on the ground that it presented no justiciable controversy, finding "no evidence ... that Defendants have or plan to take any action against [Stowe Highlands'] rights [to amend or supplement] the Declaration," and this Court affirmed on that basis. *Stowe Highlands v. Stowe Club Owners' Ass'n*, No. 2005-406, 2006 WL 5849652, at *2 (Vt. June 30, 2006) (unpub. mem.).

¶ 4. Stowe Highlands thereafter submitted two applications to the town to convert from a Resort PUD to a PRD. The first, submitted in May 2006, was denied by the town and the environmental court on the ground that Stowe Highlands had not demonstrated "the degree of control over the entire parcel necessary to be the sole applicant." *In re Stowe Highlands*, 2009 VT 76, ¶ 3. No appeal was taken from this ruling. Instead, Stowe Highlands filed a second application purporting to represent the entire development by virtue of another amend-

ment to the Declaration that it adopted in December 2006, the so-called Twelfth Supplement, in which it granted to "itself the right on behalf of all of the 236+/-acre Stowe Club Property Land, lot or unit owners to apply for any and all necessary permits to change and convert the Land from a Resort Planned Unit Development to a Planned Residential Development."

¶ 5. The town denied the second application on the same ground, concluding that "even with the Twelfth Supplement Stowe Highlands did not demonstrate the authority to make changes to lots and other land in the existing Resort PUD that it does not own and which the [DRB] may require." *Id.* ¶ 5. The environmental court agreed, and this Court affirmed, holding that "control over the entire parcel" was the critical issue and that "nothing in the Twelfth Supplement, even if valid, gives Stowe Highlands the requisite level of control over lands that have already been sold and developed." *Id.* ¶ 10. While noting that the parties "dispute[d] the validity of the [Twelfth Supplement]," we found that its validity was immaterial to our decision. *Id.* ¶ 4 n.2.

¶ 6. The validity of the Twelfth Supplement, as well as that of the Tenth, was the subject, however, of this lawsuit. Filed by plaintiffs in April 2007, the complaint sought a declaration that both supplements, as well as several additional supplements relating to certain assessments and sewer-system regulations, were invalid and unenforceable. Stowe Highlands answered, filed a counterclaim asserting the validity of the disputed provisions, and also filed a third-party complaint against the Stowe Club Owners Association. The trial court denied Stowe Highlands' motion to dismiss based on a claim of collateral estoppel, and subsequently heard oral argument on the parties' cross-motions for summary judgment. While the matter was pending, Stowe Highlands and the Owners Association entered into a stipulation dismiss-

ing the third-party complaint and agreeing to the terms of a Thirteenth Supplement, which provided, among other things, that the Tenth and Twelfth Supplements were "voided." The court adopted the stipulation as a final order on September 30, 2009.

¶ 7. Shortly thereafter, the court issued a written ruling on the cross-motions for summary judgment. The court again rejected Stowe Highlands' assertion of claim preclusion, found the disputed sewer supplements to be a reasonable exercise of authority under the Declaration, and ruled that the Tenth and Twelfth Supplements were unreasonable and unenforceable as a matter of law.[1] Relying on the previously entered stipulation and order, Stowe Highlands later moved to dismiss the complaint under V.R.C.P. 41. The trial court denied the motion, observing that the rule did not provide a mechanism to dismiss after a summary judgment ruling. The court issued a final judgment in January 2010, and thereafter entered a separate decision and order on the parties' respective requests for attorney's fees. The court concluded that, having prevailed on their challenge to the Tenth and Twelfth Supplements, plaintiffs were entitled to attorney's fees under the Common Interest Ownership Act, 27A V.S.A. § 4-117(a), and awarded fees totaling $73,455.10. The court rejected Stowe Highlands' request for attorney's fees under the Declaration. This appeal followed.

¶ 8. Stowe Highlands asserts that the trial court erred in finding that the Tenth and Twelfth Supplements were unreasonable and unenforceable as a matter of law, in rejecting its claim that plaintiffs were collaterally estopped from challenging the supplements, and in otherwise finding no genuine issue of material fact concerning the validity of the supplements. In light of the stipulation and order, however, we conclude that the claims are moot. As noted, the trial court entered an order incorporating the settlement and the terms of the so-called Thirteenth Supplement, which provided, in part, that the Tenth and Twelfth Supplements were "hereby voided and superseded by [the] Thirteenth Supplement." The Thirteenth Supplement contains none of the disputed provisions of the Tenth and Twelfth that purported to authorize Stowe Highlands to convert the property to a PRD and to apply unilaterally for the necessary zoning permits. Although the individual-owner plaintiffs were not parties to the stipulation, there is no dispute that the Tenth and Twelfth Supplements are now void. Thus any ruling by this Court can have no effect on the viability of the disputed supplements themselves. Accordingly, the claims on appeal challenging the supplements are moot. See *Chase v. State*, 2008 VT 107, ¶ 11, 184 Vt. 430, 966 A.2d 139 ("[A]n issue becomes moot if the reviewing court can no longer grant effective relief." (quotation omitted)).

¶ 9. Stowe Highlands also appeals the attorney's fee award, which was based largely on the trial court's finding that plaintiffs had prevailed in their challenge to the Tenth and Twelfth Supplements. In light of the settlement and order voiding the disputed supplements, a question arises at the outset as to whether plaintiffs may be said to have "prevailed" on the merits. In *Kirchner v. Giebink*, 155 Vt. 351, 352, 584 A.2d 1120, 1121 (1990), the plaintiffs' claims became moot when the defendants unilaterally amended the development agreement at issue. We held, nevertheless, that the plaintiffs were entitled to attorney's fees under 42 U.S.C. § 1988 even where they did not prevail "by direct judicial action as long as they were the catalyst for the relief." To meet this requirement, plaintiffs must "establish that their suit was causally related to

---

[1] The parties had earlier settled the issues involving assessments under the Eleventh Supplement.

the defendants' actions which improved their condition," and that their claims had a "colorable or reasonable likelihood of success on the merits." *Id.* at 353-54, 584 A.2d at 1122 (quotation omitted).

¶ 10. More recently, in *Merriam v. AIG Claims Services, Inc.*, 2008 VT 8, ¶ 15, 183 Vt. 568, 945 A.2d 882 (mem.), we noted that the "catalyst" theory on which *Kirchner* relied has since been rejected by the U.S. Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). In *Buckhannon*, the plaintiffs' suit challenging certain state legislation was rendered moot by subsequent legislative amendment, and the Supreme Court held that the plaintiffs could not be considered the prevailing parties for purposes of obtaining attorney's fees "without obtaining any judicial relief." *Id.* at 606. As the Court explained: "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." *Id.* at 605.

¶ 11. We did not ultimately decide in *Merriam* whether *Kirchner* or *Buckhannon* governed state law claims, nor is it necessary to do so here, as there is no doubt that plaintiffs prevailed under either approach. The *Buckhannon* Court recognized that settlement agreements incorporated into judicial consent decrees satisfy the "judicial imprimatur" requirement and alter the "legal relationship of the parties" sufficient to permit an award of attorney's fees. 532 U.S. at 604. Numerous courts have since interpreted and applied *Buckhannon* to allow attorney's fees where — as here — the parties' settlement has been specifically incorpo-

rated into a court order or has otherwise received judicial approval. See, e.g., *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 152 (2d Cir. 2009) (holding that stipulated settlement providing for dismissal of lawsuit "[u]pon the Court's approval and entry of this Stipulation and Order" satisfied *Buckhannon* requirements for award of attorney's fees); *Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002) (recognizing that "an order containing an agreement reached by the parties" was functional equivalent of consent decree for purposes of *Buckhannon* requirements); *Mady v. DaimlerChrysler Corp.*, 59 So. 3d 1129, 1133 (Fla. 2011) (holding that settlement made "under the auspices of the court" bears the imprimatur of the court and therefore could support attorney's fee award under state and federal law); *Melton v. Frigidaire*, 805 N.E.2d 322, 327 (Ill. App. Ct. 2004) (noting that in most "post-*Buckhannon* cases in which courts have found settling plaintiffs to be prevailing parties . . . the district court had given 'judicial sanction' in some capacity, most commonly by incorporation of the parties' agreement into a court order" (quotation omitted)); cf. *Hyundai Motor Am. v. Alley*, 960 A.2d 1257, 1263 n.7 (Md. Ct. Spec. App. 2008) (holding that, under state law, plaintiff was prevailing party where settlement was not incorporated into court order but trial court "acquiesced" in settlement, which was binding and enforceable against the parties). Thus, we need not specifically hold that *Buckhannon* is controlling under state law to conclude that its prerequisites for an award of attorney's fees in this case have been satisfied.

¶ 12. There is also no doubt that plaintiffs' suit was "causally related" to the stipulated settlement in which Stowe Highlands agreed to void the disputed supplements, and the trial court's subsequent ruling in favor of plaintiffs — while ultimately superfluous — demonstrates at the very least that their suit had a

"colorable or reasonable likelihood of success on the merits." *Kirchner*, 155 Vt. at 353, 584 A.2d at 1122. That plaintiffs' subsidiary claims concerning certain sewer assessments were unsuccessful does not undermine the court's conclusion that plaintiffs were the prevailing party on the core elements of their suit and therefore entitled to attorney's fees. See *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 2011 VT 29, ¶ 31, 190 Vt. 1, 35 A.3d 100 ("The determination of which party, if any, is a prevailing party and entitled to an award of attorney's fees is entrusted first and foremost to the discretion of the trial court.").[2]

¶ 13. Stowe Highlands maintains, nevertheless, that an attorney's fee award was unwarranted under the specific statute at issue here, the Common Interest Ownership Act, which provides that when a declarant fails to comply with any provision of the declaration or bylaws "any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief." 27A V.S.A. § 4-117(a). The same section goes on to provide that "[t]he court, in an appropriate case, may award reasonable attorney fees." *Id.* Stowe Highlands asserts, as it did below, that plaintiffs suffered no "adverse effects" from the disputed supplements apart from the costs of the litigation itself, and therefore were not entitled to attorney's fees.[3]

¶ 14. Although the "adverse effects" requirement appears to serve more as a predicate for bringing an action than a precondition for awarding attorney's fees, the claim is unpersuasive in either case. Any amendment that materially alters the character of a development without clear notice under the declaration adversely affects the interests of purchasers, and any purchaser who incurs litigation costs in suing to invalidate such a provision has been adversely affected. Indeed, attorney-fee provisions of this nature are designed precisely to ensure and encourage the bringing of meritorious claims. See, e.g., *L'Esperance v. Benware*, 2003 VT 43, ¶ 27, 175 Vt. 292, 830 A.2d 675 (noting that attorney's fee provision of consumer fraud act was designed "to promote and encourage prosecution" of individual claims (quotation omitted)).

¶ 15. In acknowledging that the permit change envisioned by the disputed supplements was never actually implemented, the trial court here may have overstated the case in finding that "[o]ne reason, if not the primary reason that never occurred, was . . . because Plaintiffs here were pro-active and preemptively filed this litigation seeking the declaratory relief they did ultimately obtain to nullify those supplements." In fact, the supplements were ultimately found to be immaterial to the question whether Stowe Highlands had sufficient control over the entire property to apply for the PRD conversion. See *In re Stowe Highlands*, 2009 VT 76, ¶ 9. Plaintiffs, however, could not have known this when they filed their action, and we cannot find that the trial court clearly abused its discretion in ruling that they were entitled to attorney's fees under the statute. See *Burlington Free Press v. Univ. of Vt.*, 172 Vt. 303, 306-07, 779 A.2d 60, 64 (2001) (where, as here, award of attorney's fees is not mandatory, we review award solely to deter-

---

[2] This is not to imply that courts are absolutely required to award attorney's fees to the prevailing party where, despite a favorable judgment, the party suffered no injury, obtained no judicial relief of any kind, and advanced no broader "public purpose." *Anderson v. Johnson*, 2011 VT 17, ¶¶ 9-11, 189 Vt. 603, 19 A.3d 86 (mem.).

[3] Section 4-117(a) has since been amended, effective January 1, 2012, to eliminate the "adversely affected" qualifier. See 2009, No. 155 (Adj. Sess.), § 47.

mine whether trial court abused its discretion).

¶ 16. Finally, Stowe Highlands claims that the trial court erred in rejecting its competing request for attorney's fees under a section of the Declaration authorizing attorney's fees and costs "in any proceeding to enforce the terms of the Declaration." Stowe Highlands argues that it succeeded in "enforcing" the several sewer-system supplements, which the court found to be reasonable. The court rejected the argument, noting that the Declaration's provision on "Enforcement" states that it "may be enforced . . . against any person, firm or entity violating or attempting to violate any covenant, restriction or provision hereunder" and further that the "prevailing party in any such litigation shall be entitled to all costs thereof including, but not limited to, reasonable attorney's fees." In light of this language, the court correctly concluded that attorney's fees were available to the prevailing party only in actions to "enforce" the Declaration against persons "violating or attempting to violate" its terms, a circumstance not applicable here. We thus find no error.

*Affirmed.*

Motion for reargument denied May 11, 2012.