2015 VT 93











Arapaho Owners Association, Inc.
and Kattalia v. Alpert, et al. (2014-120)

 

2015 VT 93

 

[Filed 10-Jul-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 93
 
 


 


 
 
 No. 2014-120
 
 


 


 
 
 Arapaho Owners Association, Inc.
 and 
 Mark Kattalia
 
 
 Supreme Court
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Windsor Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
  
 
 
  
 
 
 
 
 Linna Alpert, et al.
 
 
 December Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Theresa S. DiMauro, J.
 (partial summary judgment); Harold E. Eaton, Jr., J. (final judgment)
 
 
 
 
  
 
 


Paul S. Gillies of Tarrant, Gillies,
Merriman & Richardson, Montpelier, for Plaintiffs-Appellants.

 

Jon S. Readnour of Readnour Associates,
P.C., Rutland, for Defendants-Appellees.

 

 

PRESENT:    Skoglund and Robinson, JJ., and Pearson and Tomasi, Supr. JJ., and 

                    
Morris, Supr. J. (Ret.), Specially Assigned

 

 

¶ 1.            
SKOGLUND, J.   Initially, this case appeared to require
reconciliation of language in a condominium declaration, the Vermont
Condominium Ownership Act (VCOA), and the Vermont Common Interest Ownership Act
(VCIOA).  After untangling the facts and the statutes, however, we resolve
the matter in a more straightforward manner.  We affirm. 

¶ 2.            
The case began its journey through the legal system when the Board of Directors
of the Arapaho Owners Association (“BOD”), appellant here, petitioned for a
declaratory judgment seeking to reform the condominium’s declaration to reflect
the actual number of condominium units built and to allocate ownership
interests among the units.  The following facts are necessary to an
understanding of the issues presented.  

¶ 3.            
The Arapaho Village Condominium (“Arapaho Village”) in Ludlow, Vermont,
was created in 1979, pursuant to the VCOA.  27 V.S.A.
§§ 1301-1365.  According to the Declaration of Condominium
(“Declaration”), when initially conceived, Arapaho Village was to consist of
fifty units.  However, fifty-four units were actually built: five of the
planned units each were subdivided into two “split” units, and one planned
townhouse unit, 23F, was never built.  Unfortunately, the master schedule
of units known as Schedule D, a provision of the Declaration, was never amended
to reflect the number of units built.

¶ 4.            
Sometime around 2008, issues were raised to the BOD concerning a
disparity in assessments of common expenses, the claim being that owners of
similar units were not paying the appropriate share of the same.  In
addition, there existed potential questions concerning marketability of title
due to the subdivision of certain units and the inclusion in the Declaration of
the planned unit that was never built.  The BOD created a committee of
owners to look at the issues and propose solutions.  The committee
recommended that the BOD put two amendments to the Declaration before the unit
owners.  The first proposed to amend the Declaration to reflect the number
of units that were actually built and to recalculate each unit’s ownership
share.  The second amendment proposed to change the formula for allocation
of common expenses.  The voting results brought further controversy.

¶ 5.            
The first amendment, which would recalculate ownership share, required
100% approval by a vote of the unit owners, which it failed to
achieve.  The question of whether the amendment to the common-expenses
allocation was adopted was muddled by the inconsistency created by the
existence of the fifty-four units.  Relying on Article 15 of the
Declaration, which provides that any provision in the Declaration may be amended
by a 75% vote of all unit owners, the BOD believed only a 75% affirmative
ownership-interest vote was required for the adoption of a new allocation
formula.  According to the BOD, the amendment received votes representing
over 75% of the total ownership interest of units actually constructed, but
less than 75% of the scheduled ownership interests, due to the absence of
anyone voting the allocated interest of un-built Unit 23F.  
Notwithstanding the uncertainty of the voting results, the BOD declared the
vote legally sufficient and prepared a document captioned “Amendment to
Declaration of Unit Ownership of Arapaho Village Condominium Reallocating
Annual Common Expenses” (“2010 Schedule D”) and filed it in the Ludlow Land
Records.

¶ 6.            
Attorneys were summoned.  Apparently, the BOD was informed by its
counsel that the 2010 Schedule D was not legal, as it violated §§ 1306(b)
and 1310 of the VCOA.  Further, the failure of the first amendment left
the title problem unresolved.

¶ 7.            
The BOD, on behalf of the Association, brought an action in the superior
court seeking to reform the Declaration to reflect the units actually built and
to restate each unit’s ownership share in the common areas according to the new
formula that allegedly was adopted in the second amendment.  The BOD in
its complaint also sought a declaratory judgment to clear title to the existing
units.  Several owners of the split units, appellees here, opposed the
request for reformation, and also filed a counterclaim seeking a declaration
that the second amendment failed because it, like the first amendment, required
unanimous approval under VCOA § 1306(b).  Appellees in their
counterclaim also sought an injunction and money damages, claiming their
assessments had been illegally increased by the new formula.  The BOD
filed a motion for partial summary judgment on the reformation issue, and
appellees filed a cross motion for summary judgment seeking a ruling as a
matter of law that the second amendment did not pass.

¶ 8.            
In its decision, the trial court noted that all parties agreed the
percentage of undivided interest for a unit owner had a permanent nature that
could not be altered without the consent of all of the unit owners.  Thus,
there was no dispute the amendment to change the ownership shares failed
because it did not receive unanimous consent as required by § 1306(b) of
the VCOA.[1] 
In considering the effectiveness of the second amendment, which attempted to
create a new formula for assessments of common expenses, the court recognized
that the analysis required “unraveling the tangled interplay between the
Arapaho Village declaration and two separate condominium acts: the VCOA, and
the newer [Vermont] Common Interest Ownership Act [VCIOA], 27A V.S.A. §§ 1-101
et seq., which became effective in 1999.”[2]

¶ 9.            
The court first considered Article 7 of the Declaration, which, as noted
above, provided that common expenses would be allocated according to the same
value-based formula that determines the ownership interest of each unit in the
common areas.   The court also looked at Article 15 of the
Declaration, which provides that any provision in the Declaration may be
amended by a 75% vote of all unit owners.  While appellees argued that
Arapaho Village could not amend the formula used to allocate common expenses
except by the unanimous-consent requirement set forth in the VCOA
§ 1306(b), the court disagreed.  The court opined that § 1306(b)
applied only to an amendment that would alter each unit’s declared ownership
share of the common areas, and not to an amendment such as one that changed the
allocation formula formerly prescribed by § 1310.  Finding no
procedural requirement stated in § 1310,[3] the court reasoned that Arapaho Village
could amend its Declaration to adopt a new allocation formula for common
expenses so long as the amendment is approved by more than 75% of the unit
owners.

¶ 10.         Then
the court folded in consideration of the VCIOA, which became effective in
1999.  The VCIOA made a major adjustment to association management by
permitting associations to choose different formulas for allocating common
expenses and not limiting them to the traditional “value” calculation.
 Comments, 27A V.S.A. § 2-107.  The court found that, under the
VCIOA, Arapaho could amend its declaration to state a new formula for the
allocation of common expenses, even though that was not possible under the VCOA
§ 1310.  Id. § 1-206(a).[4]  With this understanding, the court
denied appellees’ motion for partial summary judgment.  

¶ 11.         The
court also denied the BOD’s motion for partial summary judgment, which sought
reformation of the Declaration to reflect the actual number of units that were
built and to restate each unit owner’s ownership share of common expenses
according to the amended formula as proposed.  The court held that
reformation would only be appropriate if there was evidence to determine the
original intent of the parties.  The court suggested that, if reformation
was appropriate at all, the percentage interest in the common areas had to be
calculated according to “some formula that was agreed upon by the parties prior
to the mistake—most likely the ‘value’ formula.”  

¶ 12.         Appellees
filed a motion for reconsideration, in which they argued, for the first time,
that the VCIOA does not permit amendments to the allocation of common expenses
by anything less than unanimous consent.  The court denied the motion.

¶ 13.         The
BOD next sought summary judgment on the question of whether the second proposed
amendment (regarding allocation of common expenses) received the number of
votes necessary for approval.  Appellees, in their response, argued again
that the VCIOA § 2-117(d) requires unanimous consent for amendments to the
allocation of common expenses.  They filed their own motion for partial
summary judgment.  With a different judge presiding, the court then
concluded that the original summary judgment ruling was flawed.  It held
that VCIOA required that any amendment to the Declaration to use a
formula other than the value formula for allocating common expenses be
unanimous under § 2-117(d).  And, so, the court concluded that
the second amendment (to change the formula for allocating common expenses) did
not receive the necessary number of votes for approval.

¶ 14.         Further,
the court agreed with the first summary judgment decision that the equitable
powers of the court to reform an erroneous condominium declaration could be
used only to give effect to the original bargain that was struck between the
developer and the unit owners.  Thus, the second amendment could not be
ratified by resort to equitable principles.  The court granted appellees’
motion for summary judgment, holding that the second amendment did not receive
the number of votes necessary for approval and that the certification of
amendment was void.  

¶ 15.         Next,
the BOD filed a motion for further proceedings, primarily asking the court to
choose a formula for assessment of common expenses, decide a claim for
attorney’s fees, and to “true-up” the assessments to correct for overpayments
and underpayments that resulted from implementation of the 2010 amendment of
Schedule D, which was voided by the court’s decision.  Both parties
desired an equitable reformation of the Declaration that would eliminate
un-built Unit 23F and recognize the five split units, and thus resolve the question
of marketability of the Arapaho Village condominium units.  Appellees
filed a motion in support of their position, proposing a new Schedule D based
on the formulas of the 1979 Schedule D, which, they argued, is “the clearest
expression of the intent of the developer and the purchasing unit owner as to
the percentage of undivided interest assigned to their unit.”  

¶ 16.         The
court reformed the Declaration as to the reallocation of the ownership
percentage assigned to un-built Unit 23F, as proposed by appellee’s Schedule
D.  The percentage assigned to Unit 23F was reassigned in proportion to
the ownership interests of all the built units.  The court understood
BOD’s proposed reallocation to assign the percentage of the phantom unit to the
spilt units only, and held that “such an allocation is not consistent with the
original intent of the developer and unit owners.”  It ordered a true-up
of assessments in light of its reallocation of the un-built unit’s ownership
percentage.

¶ 17.         More
motion practice followed, seeking to resolve the issue of the split
units.  The BOD argued that the Schedule D approved by the court used the
percentage the developer assigned to the whole unit before it was split into
upper and lower units and used the square footage of the upper and lower units
to arrive at the new number, ignoring the percentages the developer originally
assigned to the six listed half units that were built.  Apparently, the
owners of the split units had been using this formula for many years to
determine their share of ownership interests and expenses.  As the 1979
Schedule D had never been amended to account for the split units, the
percentage of ownership interest had been assigned to the former whole unit
without regard to its division into two parts.  The court found that using
the percentage assigned to the whole unit most accurately met the original
intention of the declaration.

¶ 18.         The
court granted appellees’ motion for attorney’s fees and costs, finding such
award discretionary, 27A V.S.A. § 4-117(a), and awarding $40,000 to be
recovered from the Association.  This appeal followed.

¶ 19.         The
questions on appeal before this Court are: (1) whether a unanimous decision of
unit owners is required to amend the formula for assessing common expenses; (2)
what equitable powers of reformation are available to cure a defect in a
condominium declaration; and (3) what amount of attorney’s fees, if any, is
appropriate.

¶ 20.         The
answer to the first question posed is found in 27 V.S.A. § 1306(b), which
was the law in effect when Arapaho Village was created.  Read in
conjunction with § 1310, we hold that the common expenses are indeed
assessed as part of the permanent property interest assigned in § 1306(b). 
While the court below relied on 27A V.S.A. § 2-117(d) to reach the same
conclusion, § 2-117 is not one of the sections of the VCIOA automatically
applicable to common interest communities created before January 1, 1999. 
See 27A V.S.A. § 1-204(a)(1).  

¶ 21.         If it
applied to this case, however, § 2-117(d) would lend support to our
interpretation of the earlier Act.  It states: 

Except
to the extent expressly permitted or required by other provisions of this
title, no amendment may create or increase special declarant rights, increase
the number of units, change the boundaries of any unit, or change the allocated
interests of a unit, or the uses to which any unit is restricted, in the
absence of unanimous consent of the unit owners.  

 

Id.
§ 2-117(d).  The definition of “allocated interests” is found
in 27A V.S.A. § 1-103(2): “ ‘Allocated
interests’ mean the following interests allocated to each unit: (A) In a
condominium, the undivided interest in the common elements, the common expense
liability, and votes in the association.”  The definition of “common
expense liability” is found in 1-103(6) and “means the liability for common
expenses allocated to each unit pursuant to section 2-107 of the
title.”   Therefore, under § 2-117(d), a unanimous decision of
the unit owners is required to change the formula for assessing common
expenses.  

¶ 22.         The
second question focuses on the availability of the doctrine of reformation to
correct mutual mistakes such as those presented here.  The purpose of
reformation is to “correct mutual mistakes of the parties that have created a
result neither party intended.”  Cassani v.
Northfield Sav. Bank, 2005 VT 127, ¶ 15, 179 Vt. 204, 893 A.2d 325
(quoting Burlington Sav. Bank v. Rafoul, 124 Vt. 427, 431, 209 A.2d
738, 741 (1965)).  In Cassani, the Court
acknowledged its powers to act in equity to correct the parties’ agreement (in
that case a deed) where (a) the parties to the agreement agree that it fails to
convey according to their intent; or (b) the agreement plus extrinsic evidence
shows what was intended by the parties.  Id. ¶¶ 14-16. 
The Cassani Court held that reformation was appropriate to bring the
deed into conformance with the parties’ antecedent agreement—to correct a
mutual mistake of the parties.  Id. ¶ 19. 


¶ 23.         In Strathmore Farms Ass’n v. Perrelli, No. CV030484356S, 2004 WL 2595353 (Conn. Super. Ct. Oct. 12,
2004), the Connecticut Superior Court concluded that use of the court’s
equitable power to reform an erroneous condominium declaration is appropriate
if it is able to find that the result of the reformation would be to give
effect to the original bargain that was struck between the developer and the
unit owners.  Id. at *4.  Here, the
original 1979 Declaration set forth an allocation of ownership percentages for
all the units that were to be constructed, including six half units that were
part of the planned development and properly listed in the Declaration, adding
up to 100%.  As previously noted, the 1979 Schedule D identifies only fifty
units at Arapaho Village Condominiums, while fifty-four separate units
exist.  The 1979 Schedule D accurately reflects the percentage of
undivided interest for all of the constructed units but for the fact that Unit
23F was never built and five of the units (Units 17C, 23B, 23C, 24B, and 24C,
the ‘split units’) listed on the original Schedule D were subsequently split
into two units—an upper and a lower.

¶ 24.         In
this case, both parties sought reformation of the Declaration.  Without a
resolution from the court, genuine questions of marketability of title could
not be answered.  Both sides had interests, both legal and equitable, by
reason of a significant uncertainty of rights, that
required settlement between them.  Hence, the submission to the court of a
request for declaratory judgment was an appropriate use of that remedy. 
The purpose of a declaratory judgment action is to secure an adjudication of
the rights of the parties, “so far as is requested and appropriate.”  Shaw v. Barrows, 134 Vt. 343, 343, 359 A.2d 651, 651 (1976)
(per curiam).  That is to say, a declaratory
judgment “enunciate[s] so far as is requested and appropriate the rights
of the parties and nothing more.”  Cassani, 2005 VT 127, ¶ 13
(quoting Griffith v. Nielsen, 141 Vt. 423, 427, 449 A.2d 965, 967
(1982)). 

¶ 25.         In
this case, the equitable powers of the court allowed it to reform the
Declaration to achieve the intent of the declarant, which is to allocate
ownership percentages for all the units adding up to 100% by correcting the
mistake as to the number of units in existence and making changes to the
percentage of undivided interest held by each unit.  The original unit
owners purchased their units and took title to their units with reference to
the 1979 Schedule D and the percentage of undivided interest assigned to their
units therein.  Thus, the trial court was within its discretion in
concluding that the 1979 Schedule D is the clearest expression of the intent of
the original developer and the purchasing unit owners as to the percentage of
undivided interest assigned to their unit.

¶ 26.         The
court acted within its equitable authority in resolving the title problem
caused by the mutual mistake by reassigning the percentage of interest assigned
to the un-built unit to the built units identified in the original 1979
Declaration in proportion to their ownership interests.  This resulted in
a modest increase in each remaining unit owner’s undivided ownership
percentage.  This approach to reformation used the ownership interest the
developer assigned to the whole unit, before it was split into upper and lower
units, as the basis for the reassignment of Unit 23F’s interests, and thus,
reformed the ownership interests in the condominium in a manner that most
closely follows the majority of the ownership interests set forth in the 1979
Schedule D.  This reformation was within the trial court’s equitable
discretion, which allowed it to resolve by declaratory judgment the mistakes in
the Declaration.

¶ 27.         For a
number of years, owners of the units that were split without amendment to the
Declaration apparently have been allocating the percentage of undivided
interest for their whole units between the upper and lower units based on the
square footage of each.  The VCOA does not address this method, but a
section of the VCIOA that does not automatically apply to preexisting common
interest communities like Arapaho Village nonetheless provides some support as
to the propriety of such a method.  Section 2-113 of Title 27A deals with
subdivision of units and subsequent reassignment of allocated interests.
 It states in part: 

[T]he
owner of the unit to be subdivided [shall execute an amendment that] assign[s]
an identifying number to each unit created[] and reallocate[s] the allocated
interests formerly allocated to the subdivided unit to the new units in any
reasonable manner prescribed by the owner of the subdivided unit or on any
other basis the declaration requires.  

 

27A V.S.A.
§ 2-113(b).  

¶ 28.         Under
the BOD’s proposed amendment of Schedule D, no component of common expenses
allocated to the unit owner was to be based on the unit owner’s percentage of
undivided interest.  Rather, the BOD created an entirely new method of
assessing expenses.[5] 
Its opposition to the court’s Revised Schedule D, as stated in its brief, is
that the ten split units that were not recognized in the 1979 Schedule D now
have percentage ownerships and expenses lower than the half units originally
listed in the 1979 Schedule D.  This results in the unplanned half units
enjoying lower costs than the originally planned and constructed half units.

¶ 29.         The
fact that the newly created ownership interest resulting from the distribution
of Unit 23F’s interest might not match the percentages the developer assigned
to the six half units from the original plans does not make the reassignment
inequitable or improper.  The court’s reformation did not change the
percentages reflected in the 1979 Schedule D that the original developer had
allocated to the existing units.[6]

¶ 30.         With
the reformation/revision of ownership interests, the original value-based
formula found in the Declaration for establishing the assessment of expenses
remains viable.  The original Declaration applied the requirements of 27
V.S.A. § 1310: “[C]ommon expenses shall be charged to, the apartment or
site owners according to the percentage of the undivided interest in the common
areas and facilities.”  Article 7 of the Declaration provides that the
unit owner’s percentage of undivided interest establishes “the extent of the
obligation of each unit owner for common expenses.”  Therefore, each unit
owner’s share of common expenses is now to be calculated by using the
percentage of undivided interest set forth in the Revised Schedule D.

¶ 31.         We
affirm the court’s reformation as to the number of units in the Arapaho Village
Condominium project and the court’s revision of Schedule D, which reassigns the
unit owner’s percentage of undivided interest in the community.

¶ 32.         The
third issue presented concerns the court’s award of attorney’s fees to
appellees.  The court relied on 27A V.S.A. § 4-117(a),[7] which allows for an award of attorney’s
fees in the discretion of the court when a unit owner has brought an action to
enforce a right or obligation imposed by the VCIOA, the condominium
declaration, or the by-laws.  The BOD argues that § 4-117(a) was
amended, effective January 1, 2012, after the filing of this civil action, and
that the former version of the statute should apply to this case.  The
former version read: 

If
a declarant or other person subject to this title fails to comply with any provision
of this title or any provision of the declaration and bylaws, any person or
class of persons adversely affected by the failure to comply has a claim for
appropriate relief.  The court, in an appropriate case, may award
reasonable attorney’s fees.  

 

2009, No. 155
(Adj. Sess.), § 47.  The BOD argues that the focus of the
former version is on failure to comply with the title, declaration or bylaws,
while in the amended version the focus is on enforcing rights or obligations
imposed by any of the three listed authorities.   

¶ 33.         The
BOD posits that no failure to comply was raised in this civil action.  It
argues further that regardless of which version of § 4-117(a) applies, it
acted reasonably in appointing a committee to make recommendations and propose
amendments to the Declaration, seeking a vote of the unit owners, obtaining
legal advice when there was uncertainty as to the result of the vote on the
proposed new formula for allocating common expenses, and ultimately bringing a
declaratory action.  The BOD also contends that even if the current
version of the law applies, the award is inappropriate as appellees were not
the substantially prevailing party.   

¶ 34.         Where
a statute provides for or allows the Court to award attorney’s fees, the
American rule, which otherwise places the responsibility on each party to pay
its own attorney’s fees, does not apply.  See Grice v. Vt. Elec. Power
Co., 2008 VT 64, ¶ 29, 184 Vt. 132, 956 A.2d 561. 
And, where, as here, an award of attorney’s fees is not mandatory, we review
the award solely to determine whether the trial court abused its
discretion.  Montgomery v. 232511 Invs., Ltd.,
2012 VT 31, ¶ 15, 191 Vt. 624, 49 A.3d 143 (mem.) (citing
Burlington Free Press v. Univ. of Vt., 172 Vt. 303, 306-07, 779 A.2d 60,
64 (2001)).  We hold that the court properly exercised its discretion in
making an award of attorney’s fees to appellees.

¶ 35.         The
court found the BOD acted appropriately in bringing the declaratory action to
resolve the issues presented.  The court further held: “Despite repeated
assaults upon the motivation of the BOD by the Owners, the Court does not find
support for any nefarious intent by the BOD to specifically benefit the large
unit owners at the expense of the small unit owners.”     

¶ 36.          As
no showing of bad faith or deliberate misconduct on the part of the BOD is
required, the court analyzed the claim for attorney’s fees under the two
standards suggested in Montgomery.  2012 VT 31, ¶¶ 9-10 
First the court looked at whether the counterclaim by appellees was a catalyst
for the relief granted—a standard that requires the movants, appellees, to show
that their suit was causally related to the BOD’s actions and that their claims
had a colorable or reasonable likelihood of success on the merits.  Id. ¶ 9.  The second standard evaluates
whether the result was accomplished with sufficient judicial imprimatur to make
the movant the prevailing party.  Id. ¶ 10. 
The court found appellees were entitled to attorney’s fees under either
standard.[8]
 

¶ 37.         We
agree.  Both the earlier version of 27A V.S.A. § 4-117(a) and the
current iteration allow for an award when an action is brought to enforce
compliance with the law, the declaration, or the by-laws.  The difference
in language in the two versions is of no moment.  Appellees’ pursuit of
relief resulted in a judicial determination contrary to the resolution sought
by the BOD.  Appellees prevailed on their claim rejecting the hybrid formula
for common-expense assessment and in obtaining a “true-up” of assessments
consistent with the reformation they proffered.  Appellees cross-appeal,
however, seeking their requested fees and costs of $99,643.49 and arguing the
court erred in awarding only $40,000 in fees and costs.  They note that
the BOD did not challenge their calculation of fees and costs; rather, it took
the position that legal fees were simply not allowed under
§ 4-117(a).  As found above, an award of legal fees was proper.
 

¶ 38.         For
determining “an award of attorney’s fees under Vermont law, the touchstone is
reasonableness.”  Perez v. Travelers Ins., 2006 VT 123, ¶ 13,
181 Vt. 45, 915 A.2d 750.  Here, the court
started with the “lodestar figure”—“determining the number of hours reasonably
expended on the case multiplied by a reasonable hourly rate”—and then adjusted
that fee downward based on various factors, such as “the novelty of the legal
issue, the experience of the attorney, and the results obtained.”  L’Esperance
v. Benware, 2003 VT 43, ¶ 22, 175 Vt. 292, 830 A.2d
675.     

¶ 39.         The
court limited its award to $40,000 based on several factors.  First, it
found that the overlap of two sets of statutes, the VCOA and the VCIOA, made
the issues “somewhat novel.”  It also found that significant time was
spent “on issues which were collateral to the seminal issues, such as whether a
75% vote had been achieved.”  The court stressed the fact that the BOD 

promptly sought judicial resolution of the issues facing the
Association through a declaratory action once their attempts to do so through
votes of the homeowners did not provide clarity.  This is not a case where
an association board took no action to address concerns and owners were forced
to bring a claim to get relief.  

 


¶ 40.         While
appellees suggest that the court’s analysis of L’Esperance was flawed
and that its reduction of attorney’s fees from $99,643.49 to $40,000 was
unsupported by facts, neither is true.  It is true that the court was
critical of appellees for not arguing with clarity the effect of VCIOA
§ 2-117(d) until they filed their motion for reconsideration of the first
summary judgment decision: “The briefing on the 100% affirmative requirement
was scarce at first and comparatively late in coming.”  But, as
noted above, the court emphasized that the BOD took appropriate action to
address the problems created by the un-built unit when it sought a declaratory
action to reform the Declaration, clear title to the existing units, and change
the formula for allocating common expenses. 

¶ 41.         “Trial
courts have ample discretion in determining the amount of attorney’s fees to award . . . .”  Bonanno
v. Verizon Bus. Network Sys., 2014 VT 24,
¶ 23, 196 Vt. 62, 93 A.3d 146.  That discretion, however, must be
based on an accurate assessment of the merits and efforts expended.
 Review of the entirety of circumstances attendant to this case leads us
to uphold the award.  The extensive litigation, the positions taken by
both sides, the oddity of the situation faced by the BOD created years earlier
by a phantom un-built unit, and the struggles of both sides and the court below
to resolve this situation support the court’s discretion in awarding the attorneys’
fees and costs as it did.  We affirm.[9]  

Affirmed.    


 
 
  
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 

 














[1] 
Section 1306(a) assigns to each unit an undivided interest in the common areas
and facilities based on a percentage that shall be computed by taking as a
basis “the value of the apartment or site in relation to the value of the
property.”  Subsection (b) provides that the percentage of the undivided
interest “shall have a permanent character” that cannot be altered without the
unanimous consent of all unit owners.  So, the ownership-reallocation
amendment failed.  

 





[2] 
The VCIOA is Vermont’s adopted version of the Uniform Common Interest Ownership
Act.

 





[3]
 Section 1310 of the VCOA provides that every condominium association must
allocate its common expenses according to each unit’s percentage ownership
share in the common areas and facilities.





[4] 
Section 1-206(a) states, “The declaration, bylaws, or plat and plans of any
common interest community created before the effective date of this title may
be amended to achieve any result permitted by this title, regardless of what
applicable law provided before this title was enacted.”





[5]
 The BOD’s proposed amendment would allocate total annual common expenses between
the units by applying a formula whereby 62.5% of the annual common expenses
would be shared equally (i.e. per capita) and the remaining 37.5% would be
allocated between the units based upon their finished areas as established by
the Ludlow Board of Listers.

 





[6]
 By affirming the trial court’s exercise of discretion in this case, we do
not suggest that on this record the trial court’s reformation of the
condominium is the only possible reformation that would hew to the original
intentions embodied in 1979 Schedule D, or that a reformation that treated all
split units alike and maintained a uniform proportion between the allocations
to split units and those to whole units would exceed the court’s discretion.

 





[7]
 Pursuant to 27A V.S.A. § 1-204, § 4-117 applies automatically
to a common-interest community created in this state before January 1, 1999.





[8]
 There was no challenge to the affidavit of attorney’s fees presented by
appellees and no objection to the reasonableness or amount of the fees sought
or to the manner of proof of the fees as submitted.  





[9] 
We remand appellees’ Motion to Enforce True-Up Order to the trial court to
address in the first instance.  The true-up of assessments shall be
determined in accordance with this opinion.