2008 VT 8

## Priscilla MERRIAM v. AIG CLAIMS SERVICES, INC.

[945 A.2d 882]

No. 06-409

*Toor*, J.

¶ 1. January 28, 2008. Plaintiff Priscilla Merriam appeals from the superior court's dismissal of her workers' compensation enforcement action against defendant AIG Claims Services, Inc., arguing that the superior court erred in determining that it lacked jurisdiction to enforce an interim order. Plaintiff also seeks at-

---

torney's fees and costs incurred in pursuing the enforcement action. Defendant contends that the appeal has been mooted by defendant's subsequent payments to plaintiff, and has moved to dismiss. We disagree; plaintiff's claim for attorney's fees still presents a live controversy. On the merits of that claim, we conclude that no fees are due, and affirm.

¶ 2. This appeal stems from a March 12, 2004, interim order by the Commissioner of Labor and Industry ordering defendant to pay medical bills occasioned by plaintiff's work-related lower back injuries. That order, pursuant to 21 V.S.A. § 662(c), ordered defendant to:

> immediately pay interim benefits. These benefits shall include indemnity beginning 4/14/03, the date of surgery, through 06/11/03 the last medical record on file with the Department at the rate to be determined by [defendant] and subject to the review of the Department. The [defendant] shall also pay all medical bills relating to this injury, including the surgery that occurred on 4/14/03. Medical benefits will continue to be paid pursuant to 21 V.S.A. Section 640(a). Payment shall be made 30 days from the date of this order.

¶ 3. The interim order did not specify either the exact amount owed or to whom the payment should be made. Plaintiff did not submit any bills to defendant, and defendant made no payments to plaintiff for almost two years. Plaintiff then moved to enforce the interim order in the superior court under 21 V.S.A. § 675(a), which allows a workers' compensation beneficiary to bring an enforcement action "to collect all or any part of past due installments in any court of law having jurisdiction of the amount involved," and mandates an award of "interest, reasonable attorney fees and costs" to a prevailing employee in such an action.

¶ 4. The record reflects that plaintiff first submitted bills and documentation to defendant *after* filing the enforcement action. During the pendency of the enforcement action, in March 2006, plaintiff sent a medical release to defendant, enabling defendant to obtain medical records and bills associated with the action.

¶ 5. The superior court determined, in its ruling denying plaintiff's subsequent motion for summary judgment, that it lacked subject-matter jurisdiction over the claim because the Commissioner had not yet reduced AIG's liability to a definite dollar amount, and because defendant had not yet received adequate bills. The court also noted that the parties disagreed about whether and how the Workers' Compensation Rules apply to this case.

¶ 6. The court concluded that it had "no authority to establish, in the first instance, [the] amount and resolve the other issues related to it." See 21 V.S.A. § 606 (issues arising under the Workers' Compensation Act, "if not settled by agreement of the parties . . . *shall* be determined . . . by the commissioner") (emphasis added). Accordingly, the superior court dismissed the collection action. V.R.C.P. 12(h)(3). Plaintiff appealed.

¶ 7. After the enforcement action was dismissed, and while this appeal was pending, plaintiff applied for and the Commissioner held a formal hearing to determine precisely what benefits plaintiff was entitled to receive. Plaintiff claimed medical expenses of $57,854.11, legal fees of $9,000 or 20% of the medical-expenses award, and costs. On January 2, 2007, the Commissioner granted those exact amounts and ordered defendant to pay them. Plaintiff concedes that "[d]efendant AIG has now paid the medical bills and interest sought in the enforcement action." Defendant also paid the attorney's fees ordered by the Commissioner, which did not include those in-

curred in the enforcement action in superior court.

¶ 8. Just prior to oral argument before this Court, defendant moved to dismiss this appeal, arguing that we lack jurisdiction to hear an appeal arising out of a § 675 action when the payments sought in that action have since been made, because the appeal is moot.[*]

¶ 9. This Court has jurisdiction to decide only " 'actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.' " *In re House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). Our jurisdiction is "the same as that given to the Federal Supreme Court by the United States Constitution." *Id.* In order for this Court to have jurisdiction over an appeal, it must present a live controversy at all stages of the appeal, and the parties must have a "legally cognizable interest in the outcome." *Doria v. Univ. of Vt.*, 156 Vt. 114, 117, 589 A.2d 317, 319 (1991). When there is no live controversy or the parties lack a cognizable interest in the outcome, an appeal is moot, and we have no jurisdiction to decide it. *Id.*

¶ 10. Having conceded that defendant has made all of the payments sought before the Commissioner, plaintiff argues that this appeal is nonetheless not moot because she is still owed attorney's fees incurred during the enforcement action. Defendant argues, as a threshold matter, that a claim for attorney's fees is insufficient to create a justiciable case or controversy if none exists on the merits of the underlying claim. We decline to adopt that rule today, and agree with plaintiff that the attorney's fees still present a live controversy. Accordingly, we turn to the merits of that claim, which requires us to review the propriety of the superior

court's dismissal for lack of subject-matter jurisdiction.

¶ 11. Here, in dismissing the enforcement action, the superior court noted that the bills and documentation required under Rule 40 had either not been submitted to defendant or were in disarray, that the interim order did not set out a dollar amount to be paid, that it was not clear to whom payments should be directed, and that these matters were for the Commissioner to decide in the first instance.

¶ 12. As a general matter, questions arising under the Workers' Compensation Act are to be decided first by the Commissioner. 21 V.S.A. § 606. If an insurer denies a claim on the basis that it believes another insurer or employer is liable, the Commissioner "shall order that payments be made by one employer or insurer until a hearing is held and a decision is rendered." *Id.* § 662(c). After such an interim order is issued, "either party may apply to the commissioner for hearing," *id.* § 663, within sixty days of which the Commissioner "shall make an award supported by findings of fact and the applicable law." *Id.* § 664. This final order, if favorable to the employee, "shall include the date on which the employer's obligation to pay . . . began," and "interest at the statutory rate computed from that date on the *total amount of unpaid compensation.*" *Id.*

¶ 13. As the trial court noted, an injured employee must submit the "bill and legible, supporting documentation" relating to compensable expenses to the employer or insurer, who then has thirty days to pay the bill. Workers' Compensation Rule 40.021(C), 3 Code of Vermont Rules 24 010 006-3. The *clear import of this rule is* that a bill is not "past due" under § 675 until such bills and documentation have been submitted. Plaintiff did not allege in her complaint that any bills had been submitted to defendant prior to the filing of the enforcement action, but only alleged generally that defendant had failed

---

[*] We deferred ruling on the motion to consider it with the merits of the appeal.

to pay for the bills referenced in the interim order. Accordingly, the claim was not ripe for the superior court's review, and the court lacked subject-matter jurisdiction over it. Cf. *Killington, Ltd. v State*, 164 Vt. 253, 260, 668 A.2d 1278, 1283 (1995) (when claim is unripe, court lacks subject-matter jurisdiction and must dismiss the claim).

¶ 14. Plaintiff contends that, although she did not "prevail" in the enforcement action, it was a "catalyst" to her receiving payment from AIG, and that she is therefore due attorney's fees incurred in that action. See *Kirchner v. Giebnik*, 155 Vt. 351, 353, 584 A.2d 1120, 1121 (1990). We disagree.

¶ 15. As defendant notes, *Kirchner* rested in part on dicta in *Hewitt v Helms*, 482 U.S. 755, 760-61 (1987), which has since been expressly disavowed by the U.S. Supreme Court. See *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 603 n.5 (2001). In *Buckhannon*, the Court dismissed the catalyst theory that some courts, including our own, derived from *Hewitt* and announced a much more restrictive construction of "prevailing party": "We cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." *Id.* at 606.

¶ 16. However, we need not overrule *Kirchner* to conclude that plaintiff is not entitled to attorney's fees for the premature enforcement action. Vermont courts generally follow the "American rule," under which each party to litigation is responsible for its own attorney's fees. *Harsch Props., Inc. v Nicholas*, 2007 VT 70, ¶ 11, 182 Vt. 196, 932 A.2d 1045. Fees may be awarded, however, where authorized by statute. *Fletcher Hill, Inc. v.*

*Crosbie*, 2005 VT 1, ¶ 5, 178 Vt. 77, 872 A.2d 292. This is such a situation; an employee bringing an enforcement action can recover "interest, reasonable attorney fees and costs" in the superior court "[i]f the employee prevails." 21 V.S.A. § 675(a). As is evident from the foregoing analysis of the dismissal, plaintiff did not prevail in the traditional sense in the enforcement action, and so must rely on the *Kirchner* catalyst theory.

¶ 17. In *Kirchner*, we held that a party may recover attorney's fees on a catalyst theory when that party can show both (1) a causal, or catalytic, connection between the filing of the suit and the other party's action, and (2) that he or she had a "colorable or reasonable likelihood of success on the merits." 155 Vt. at 353, 584 A.2d at 1121-22. We quoted with approval a First Circuit case in which the first standard was articulated as follows: "The plaintiffs are prevailing parties as a matter of fact if the plaintiffs' suit and their attorney's efforts were a necessary and important factor in achieving the improvements undertaken by defendants on the plaintiffs' behalf." *Id.* at 353-54, 584 A.2d at 1122 (quoting *Ortiz de Arroyo v Barcelo*, 765 F.2d 275, 282 (1st Cir. 1985) (citations and quotations omitted)).

¶ 18. Plaintiff has not shown, as required under *Kirchner*, that her enforcement action was a "necessary and important factor" in causing defendant's payment of the amounts due. *Id.* at 354, 584 A.2d at 1122. Plaintiff avers, in support of her catalyst theory, that "AIG paid a majority of the medical bills for which [plaintiff] sought enforcement directly to the care providers between August 29, 2006 and December 6, 2006." But this militates *against* a conclusion that the enforcement action was a catalyst for the payments: the enforcement action had already been dismissed before August 29, 2006. After it was dismissed, the action could hardly have induced AIG to pay claims it would not otherwise have paid.

¶ 19. Plaintiff's response to this timing conundrum is simply that the Commissioner's final order did not cause defendant to pay plaintiff's medical bills, because a majority of the bills were paid before the final order issued. But this still fails to satisfy the *Kirchner* requirement, which focuses on the causal link between the enforcement action and the payment. The allegation that the Commissioner's final order did not cause the payment does not compel the conclusion that the enforcement action did. It appears from the record that the payments were simply not made until bills and documentation were provided to the insurer as required by Workers' Compensation Rule 40.021(C).

¶ 20. Plaintiff also draws support for her catalyst argument from *Hennigan v. Ouachita Parish School Board,* 749 F.2d 1148 (5th Cir. 1985), which we quoted in *Kirchner.* Plaintiff contends that, under *Hennigan,* the burden was on defendant to "demonstrate the worthlessness of the plaintiff's claims and explain why he nonetheless voluntarily gave the plaintiffs the requested relief." *Id.* at 1153. Even assuming that *Hennigan* survives *Buckhannon,* the *Hennigan* court made clear that the burden shifts to defendants only *after* a plaintiff has shown both "that he succeeded on the central issue in the litigation *and* that the lawsuit caused the defendant to act." *Id.* at 1152 (emphasis added). The plaintiff who establishes both of these factual predicates "has made a prima facie case that he is the prevailing party and entitled to attorney's fees." *Id.* As already noted, plaintiff has not shown that the enforcement action "caused the defendant to act," *id.,* and, therefore, defendant need not demonstrate that plaintiff's enforcement action was worthless.

¶ 21. Plaintiff next argues that, regardless of when AIG paid the claim, she is entitled to recover attorney's fees related to the enforcement action because she ultimately prevailed on her underlying claim. The fact that plaintiff prevailed on her underlying compensation claim before the Commissioner does not, however, mean that she must be awarded fees in her enforcement action despite not prevailing therein. To hold otherwise would be to authorize — indeed, to encourage — unnecessary or premature collateral actions such as the enforcement action here. See *Buckhannon,* 532 U.S. at 605-06 ("[W]e have not awarded attorney's fees where the plaintiff has secured the reversal of a directed verdict, or acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by *judicial* relief.") (citations and quotations omitted). Plaintiff here acquired no relief, judicial or otherwise, by virtue of the enforcement action, and is not entitled to fees incurred in it.

¶ 22. We emphasize, in closing, that we do not wholly foreclose awards of attorney's fees incurred in interim-order enforcement actions under § 675. Under different facts, a claimant might prevail before the superior court in such an action either by direct judicial enforcement of a more specific order, or under *Kirchner.* As neither circumstance is present here, plaintiff is not entitled to the fees incurred in her futile enforcement action.

*Affirmed.*