2014 VT 24

# Nicholas Bonanno v. Verizon Business Network Systems and Sedgwick Claims Management Systems

[93 A.3d 146]

No. 12-261

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed February 28, 2014

*Christopher McVeigh* of *McVeigh ♦ Skiff*, Burlington, for Plaintiff-Appellant.

*J. Christopher Callahan* and *Brendan P. Donahue* of *Brady & Callahan, P.C.*, Springfield, for Defendants-Appellees.

¶ 1. **Reiber, C.J.** Plaintiff Nicholas Bonanno appeals from the superior court's grant of summary judgment against him and in favor of his employer, Verizon, and Verizon's third-party claims administrator, Sedgwick Claims Management. Plaintiff's claims stem from an alleged breach of a settlement agreement with employer regarding his workers' compensation claim. On appeal, plaintiff argues that the trial court erred because there was a dispute of material fact as to the voluntariness of employer's temporary total disability (TTD) payments made to plaintiff after the TTD termination date indicated in the settlement. Plaintiff also contends that the trial court abused its discretion by awarding inadequate attorney's fees. Employer cross-appeals and argues that the trial court abused in its discretion by awarding any attorney's fees. We affirm the trial court in all respects.

¶ 2. The factual context for this case is somewhat convoluted. Plaintiff was employed by employer Verizon when he suffered spinal cord injuries during a series of three car accidents. Litigation commenced when employer contested the necessity of a surgery proposed by plaintiff, and the Department of Labor ruled in plaintiff's favor, requiring employer to pay for plaintiff's surgery. *N.B. v. Verizon*, Op. No. 24-08WC (June 12, 2008), http://www.labor.vermont.gov/portals/0/WC/BonannoDecisionGB.pdf. Plaintiff experienced complications from the surgery that necessitated lifetime care, including deep vein thrombosis and postphlebitic syndrome. Employer appealed the Department's ruling to the superior court. The parties reached a settlement before trial, although the parties dispute exactly when they reached agreement. What is certain, how-

ever, is that the Department approved the settlement on July 13, 2010, after receiving a statement from plaintiff explaining that the settlement was in his best interest and requesting the Department's approval.

¶ 3. The provisions of the approved "Form 15" settlement agreement relevant to the instant case included: (1) a lump sum payment of $230,000 to be paid within fifteen days of the Department's approval of the settlement; (2) payment of continued TTD benefits through May 1, 2010; and (3) payment of plaintiff's "regular medical benefits" until thirty days after federal approval of the submitted Medicare Set Aside Trust.

¶ 4. In July 2010, employer issued plaintiff a check for $216,990.28. In response to plaintiff's inquiry as to why the check did not reflect the full amount of the agreed-upon settlement, employer explained that it had taken a credit for TTD payments made after May 1, 2010. Plaintiff disputed the amount of the credit. Plaintiff also disputed employer's refusal, through its third-party administrator, to pay a medical bill resulting from a doctor's visit on May 25, 2010. Third-party administrator's claims adjuster maintained that the visit was not related to plaintiff's work injury.

¶ 5. On October 15, 2010, plaintiff brought the current suit against both employer and third-party administrator to enforce the terms of the settlement agreement. Plaintiff claimed that defendants improperly took a credit by subtracting the TTD payments made after May 1, 2010 from the lump sum payment, miscalculated the amount of the credit, and wrongfully denied plaintiff's medical bill. As to the credit calculation claim, employer conceded error and issued two checks amounting to the miscalculation plus interest. Employer continued to maintain, however, that it was entitled to a credit for the post-May 1 TTD payments. Regarding the May 25, 2010 doctor's appointment, defendants submitted, and the court granted, a motion to compel plaintiff to provide expert disclosure. After plaintiff submitted the disclosure, defendants issued payment for the medical bill according to the workers' compensation fee schedule.

¶ 6. Defendants moved for summary judgment, which the trial court granted. The court concluded that although "[t]he settlement agreement itself makes no provision for the treatment of disability payments made after May 1, 2010," the agreement *did* call for a total payment of $230,000 and TTD payments until May 1, 2010,

which is precisely what plaintiff received. The court rejected plaintiff's argument that the post-May 1, 2010 payments were voluntary because employer was required to continue making TTD payments under Vermont Workers' Compensation Rule 18.110 until a Notice of Intention to Discontinue Payments, or Form 27, was filed to terminate the TTD benefits. Since the Form 27 was never filed, and probably would not have been approved by the Department while the settlement was still pending, employer could not be considered a volunteer. To hold otherwise, the court reasoned, would give plaintiff a windfall. The court held that the other issues raised by the parties, including third-party administrator's liability, the payment of the medical bill, and the calculation of the credit, were moot.

¶ 7. Plaintiff moved the court to reconsider its ruling and for attorney's fees. The court denied the motion to reconsider, finding no issues of disputed fact and no reason to disturb its legal conclusions. As to the attorney's fees, the court concluded that plaintiff had prevailed on his claim relating to the medical bill, and thus his attorney was entitled to an award under 21 V.S.A. § 675[a]. However, the court found that several factors "weigh[ed] heavily" against a large award. These included the peripheral nature of the medical bill issue, plaintiff's refusal to provide the relevant discovery until ordered by the court, and defendants' agreement to pay the bill once it received the discovery. Noting that "the results in this case unquestionably favor [defendants]," the court awarded $1000.00 in fees and $250.00 in costs for the expert witness.

I.

¶ 8. Plaintiff first argues that the trial court erred in granting summary judgment for defendants. We review a grant of summary judgment de novo. *Ianelli v. U.S. Bank*, 2010 VT 34, ¶ 7, 187 Vt. 644, 996 A.2d 722 (mem.). Summary judgment is proper when there is no dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(a). The nonmoving party is entitled to "the benefit of all reasonable doubts and inferences." *Ianelli*, 2010 VT 34, ¶ 7 (quotation omitted).

¶ 9. The crux of plaintiff's argument is that defendants' claims adjuster could have chosen to file a Form 27 to terminate TTD payments after May 1, 2010 — the date of TTD benefits termination indicated in the proposed settlement agreement. Therefore,

plaintiff contends, employer's continued TTD payments were voluntary, and employer's decision to treat the continued payments as an advance on the settlement deprived plaintiff of the lump sum payment he was entitled to under the plain language of the agreement.[1] In the alternative, plaintiff argues that the voluntariness of the TTD payment is a question of fact that should be submitted to the jury.

¶ 10. In the context of workers' compensation insurance, an employer's payment is considered voluntary if made "while under no obligation to pay or when no interest of [employer's was] protected by payment." *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 132 Vt. 341, 344, 318 A.2d 659, 661 (1974). This Court "determine[s] voluntariness on the basis of the equities rather than any strict rule." *Id.* at 345, 318 A.2d at 662. Because the law encourages subrogation and discourages voluntary payments, "the concept of 'voluntariness' should be strictly construed and limited." *Id.* at 346, 318 A.2d at 662; see also *N.E. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 433 A.2d 715, 719 (Me. 1981) (noting that "any doubt as to the applicability of the [voluntariness] exception should be resolved against the existence of volunteer status," because "[o]ne who pays . . . under a mistaken belief that he had an obligation to pay or interest to protect is not a volunteer" (citations omitted)).

---

[1] Plaintiff raises several other arguments which we dispose of as irrelevant and without merit. First, plaintiff disputes the trial court's reliance on the facts recited in defendants' statement of undisputed facts because plaintiff's responses were unsupported by record citations. We do not address plaintiff's argument because even if we accept plaintiff's version of the facts, defendants are still entitled to summary judgment as a matter of law. Second, plaintiff claims that the court erred in stating that the entire payment of $230,000 was made by July 20, 2010, when in fact employer issued several checks after that date. Nowhere in the court's opinion or its order on plaintiff's motion for reconsideration does the court state what plaintiff alleges; rather, the court correctly stated that employer "has paid exactly the amount agreed on by the parties in the settlement." Even if the court had erred, the error would be immaterial to the issues presented on summary judgment. Finally, plaintiff claims that the court ignored the conflicting evidence as to whether defendants paid plaintiff's medical bill and whether the credit taken by employer was properly calculated. Plaintiff's claim that he is entitled to attorney's fees for his success on the medical bill issue forecloses his argument that there is a dispute of material fact as to whether the bill was actually paid, because, in order to claim attorney's fees, logically he must concede — and in fact, does concede — that the bill was paid.

¶ 11. ██ Applying our precedent to the undisputed facts, we hold that employer's continued TTD payments were not voluntary.[2] Employer's obligation to pay TTD continued until plaintiff successfully returned to work, the employer filed a Form 27 documenting that plaintiff had reached a medical end result or had failed to make a good faith work search, or the Department approved a settlement agreement terminating plaintiff's TTD benefits. See Workers' Comp. Rules 17-18, 3 Code of Vt. Rules 24 010 003-14-15, available at http://www.lexisnexis.com/hottopics/codeofvtrules [hereinafter Workers' Compensation Rules].

¶ 12. ██ In this case, employer's obligation to pay was terminated upon the Department's approval of the parties' settlement agreement. The termination of employer's obligation to pay TTD benefits was not effective until the settlement agreement was signed by the Commissioner of the Department, and employer was not entitled to terminate the TTD payments any sooner. Workers' Compensation Rule 17.600 provides:

> Form 15 — Settlement Agreement (Full and Final). This form may be used to settle a genuine dispute over the compensability of a claim and/or the extent of benefits due. *Once executed by the parties and approved by the commissioner, this form shall relieve the employer of all further liability* for compensation benefits related to the injury. This form must be accompanied by a letter identifying the disputed issue(s), detailing the parties' respective positions (supported by adequate medical documentation if necessary), and fully explaining the terms of the proposed settlement. *The agreement shall not be approved unless the commissioner is convinced that the best interests of the claimant are served thereby,* and under no circumstances should a claimant be promised that this will occur.

(Emphasis added.) In short, by its plain language, Rule 17.600 does not permit settlement agreements to be binding unless certain predicate conditions are met, including execution of the agreement by the parties, assurance that the best interests of the

---

[2] We need not address plaintiff's contention that voluntariness is a question of fact because, regardless, plaintiff has not demonstrated a genuine dispute of material fact sufficient to defeat summary judgment. See *Ianelli*, 2010 VT 34, ¶ 7.

claimant are served by the settlement, and approval by the Commissioner. Here, regardless of when there was a meeting of the minds between the parties as to the settlement — a topic on which there is considerable dispute — employer was obligated to continue making payments under Rule 17.600 until the Commissioner approved the settlement, an event that did not occur until July 13, 2010. Therefore, employer's continued payments after May 1, 2010 were not voluntary.

¶ 13. ■ Moreover, although the settlement agreement was not itself binding until approved by the Commissioner, the terms of the parties' agreement made it clear that the settlement, if approved, would terminate employer's obligation to pay TTD benefits as of May 1, 2010. This Court interprets the unambiguous terms of the settlement as a matter of law. *Ianelli v. Standish*, 156 Vt. 386, 389, 592 A.2d 901, 903 (1991). "The cardinal principle in the construction of any contract is to give effect to the true intention of the parties." *In re Cronan*, 151 Vt. 576, 579, 563 A.2d 1316, 1317 (1989). In order to effectuate the intentions of the parties, the literal terms of the contract cannot always be taken in isolation. Rather, "the contract provisions must be viewed in their entirety and read together." *In re Stacey*, 138 Vt. 68, 72, 411 A.2d 1359, 1361 (1980). The settlement agreement, executed by plaintiff and approved by the Commissioner, required employer to pay TTD benefits only until May 1, 2010. Although employer was obligated to pay TTD benefits when the payments were made, the parties' approved agreement essentially retroactively discharged employer's TTD obligation effective May 1.

¶ 14. Plaintiff is correct that the settlement agreement called for a lump sum payment of $230,000, and that employer's decision to deduct the post-May 1, 2010 TTD payments deprived plaintiff of the agreement's literal terms. Instead of a single payment after the Commissioner's approval, plaintiff got some of his settlement monies early.[3] However, it is equally true that the agreement required employer to pay TTD benefits only until May 1, 2010, and that plaintiff's interpretation of the contract would deprive *employer* of the agreement's literal terms. Therefore, these terms cannot simultaneously be fulfilled. Reading the provisions together

---

[3] Had the Commissioner rejected the settlement agreement, the TTD payments would have been considered ongoing, and would not have counted as advances toward permanency or a lump sum settlement.

in light of the parties' obvious intent, however, reveals that the agreement called for a $230,000 lump sum payment and TTD benefits to be paid by employer until May 1, 2010. As the trial court noted, plaintiff received exactly that. To hold otherwise would award plaintiff a windfall, contrary to the parties' clear intent. Accordingly, we hold that employer's TTD payments after May 1, 2010 were not voluntary, and plaintiff is not entitled to those payments in clear contravention of the settlement agreement.

¶ 15. Plaintiff suggests that the payments were voluntary because, although the settlement agreement was not final until approved by the Commissioner, defendants could have filed a Form 27 terminating benefits effective May 1. There is nothing in the Workers' Compensation Rules authorizing termination of TTD on the basis of an unapproved settlement agreement in the absence of a finding of a medical end result, failure to undertake a good faith work search, or a successful return to work. See Workers' Compensation Rules 17-18. Plaintiff does not argue that he reached a documented medical end result, successfully returned to work, or failed to undertake a good faith work search by May 1, 2010. Rule 18. Further, as explained above, termination on the basis of the settlement agreement could be effective only upon the Commissioner's approval of the settlement agreement. Therefore, employer had no basis to terminate TTD payments before the settlement agreement was approved.

¶ 16. We emphasize the limits of our decision. Our holding turns on the specific terms of the parties' approved settlement agreement in this case and the timing of the settlement approval process.

## II.

¶ 17. Next, plaintiff contends that the trial court's grant of $1000 in attorney's fees and $250 in costs for prevailing on the medical bill issue was unreasonable, given the "time and effort" that counsel expended on the litigation. Defendants cross-appeal, arguing that plaintiff did not obtain judicial relief from the court and thus was not entitled to any fees or costs.

¶ 18. ▉ Under Vermont law, parties must "bear their own attorneys' fees absent a statutory or contractual exception." *Southwick v. City of Rutland*, 2011 VT 105, ¶ 5, 190 Vt. 324, 30

A.3d 1298 (quotation omitted). Here, the relevant statutory provision is 21 V.S.A. § 675(a), which provides that:

> If an award is made under the provisions of this chapter, including interim orders, issued pursuant to sections 643a and 662 of this title, or an agreement is approved by the commissioner, and the employer or insurance carrier fails to comply with the award or agreement, the employee, subject to the stay provisions of subsection (b) of this section, may proceed to collect all or any part of past due installments in any court of law having jurisdiction of the amount involved. If the employee prevails, interest, reasonable attorney fees and costs shall be allowed.

¶ 19. The key question faced by the trial court was whether plaintiff "prevail[ed]" on his claim for purposes of the statute. The court found that although plaintiff had not prevailed on his claims that employer took an improper credit against the settlement and that the credit taken was too large — characterizing the results as "unquestionably" favoring employer — plaintiff *did* prevail on his claim that defendants had improperly failed to pay plaintiff's medical bill because defendants "ultimately agreed to pay the medical bill while the litigation was pending."

¶ 20. Defendants argue that this Court should adopt the U.S. Supreme Court's holding in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), that eligibility for attorney's fees requires a "material alteration of the legal relationship of the parties" effectuated by court action, such as an enforceable judgment on the merits. *Id.* at 604 (quotation omitted). The U.S. Supreme Court rejected the "catalyst theory," holding that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. Defendants argue that plaintiff did not bring about an alteration of the legal relationship between the parties sufficient to prevail under *Buckhannon*, and further that plaintiff's claim fails even under the catalyst theory.

¶ 21. ▪ Here, defendants' decision to pay plaintiff's medical bill was not brought about by judicial order or other action bearing "judicial imprimatur." *Id.* Plaintiff cannot prevail under the Su-

preme Court's reasoning in *Buckhannon*; thus, we are squarely faced with the decision of whether to apply *Buckhannon* in our interpretation of § 675(a). In *Merriam v. AIG Claims Services, Inc.*, 2008 VT 8, ¶¶ 16, 22, 183 Vt. 568, 945 A.2d 882 (mem.), we expressly declined the opportunity to overrule our prior case law endorsing the catalyst theory. See *Kirchner v. Giebink*, 155 Vt. 351, 352-53, 584 A.2d 1120, 1121 (1990) (endorsing the catalyst theory). Rather, we stressed that although the plaintiff was not entitled to fees in that case, "[u]nder different facts, a claimant might prevail before the superior court in such an action either by direct judicial enforcement of a more specific order, or under *Kirchner*." *Merriam*, 2008 VT 8, ¶ 22. We take this opportunity to extend our holding in *Merriam* and explicitly preserve the catalyst theory as a possible route to attorney's fees under § 675(a). This accords with our recognition that "[t]he workers' compensation statute is remedial and is to be construed broadly to further its purpose of making employees injured on the job whole." *Hodgeman v. Jard Co.*, 157 Vt. 461, 464, 599 A.2d 1371, 1373 (1991).

¶ 22. To prevail for purposes of the catalyst theory, a party must demonstrate: (1) that the filing of the lawsuit was a "necessary and important factor in achieving" the other party's change in conduct, and (2) a "colorable or reasonable likelihood of success on the merits." *Kirchner*, 155 Vt. at 353-54, 584 A.2d at 1121-22 (quotation omitted). Here, we agree with the trial court that defendants paid plaintiff's medical bill as a direct result of plaintiff's lawsuit to enforce the terms of the settlement agreement pursuant to 21 V.S.A. § 675(a). There is little doubt that plaintiff's lawsuit was a "necessary and important factor" in obtaining payment from defendants, and thus was the catalyst for defendants' action. As to the second factor, although we cannot say whether plaintiff surely would have obtained a judgment in his favor on the medical bill issue, neither was his claim "frivolous, unreasonable, or groundless" as a matter of law. *Id.* at 354, 584 A.2d at 1122 (quotation omitted). Plaintiff demonstrated that defendants had paid medical bills generated by visits with this same doctor many times before, and argued that the doctor's diagnosis during the particular visit at issue was related to, albeit slightly different from, the injuries giving rise to his workers' compensation claim. Moreover, defendants bore the burden of supporting denial of plaintiff's claim. *Merrill v. Univ. of Vt.*, 133

Vt. 101, 105, 329 A.2d 635, 637 (1974) (holding that where workplace injury and resulting disability is unquestioned, burden is on employer to show that disability had ceased). Therefore, we agree with the trial court that plaintiff prevailed on the medical bill issue and was entitled to attorney's fees and costs.

¶ 23. ■■ ■■ Trial courts have ample discretion in determining the amount of attorney's fees to award, and we will not disturb the court's decision unless it has abused this discretion. *Southwick*, 2011 VT 105, ¶ 4. "For purposes of an award of attorney's fees under Vermont law, the touchstone is reasonableness." *Perez v. Travelers Ins.*, 2006 VT 123, ¶ 13, 181 Vt. 45, 915 A.2d 750. The court begins with "the number of hours reasonably expended on the case multiplied by a reasonable hourly rate," and can then adjust the fee based on factors such as "the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation." *L'Esperance v. Benware*, 2003 VT 43, ¶ 22, 175 Vt. 292, 830 A.2d 675. Here, the trial court reduced the award from plaintiff's requested $17,932.50 to $1000 in fees and $250 in costs. The court noted that the unpaid medical bill was a peripheral issue compared to the rest of the litigation, and that plaintiff did not provide the discovery supporting payment until compelled by the court.

¶ 24. ■■ As to the latter reason, we caution that although generally a party's unnecessary delay may support a reduction in attorney's fees, in workers' compensation cases, courts must also ensure that the burden of proof remains on employers to show that their refusal to pay a medical bill comports with the Department's orders — which require employers to pay medical bills related to the plaintiff's workplace injury — and Vermont's workers' compensation laws. See 21 V.S.A. §§ 640a, 643a; *Merrill*, 133 Vt. at 105, 329 A.2d at 637. Although our holding in *Merrill* pertained to an employer's cessation of benefits based on a claim that the employee was no longer disabled, the precedent is analogous to this case, where defendants claim that the employee's injury did not result from the disability.

¶ 25. ■■ Despite this cautionary note regarding the burden of proof for rejection of medical bills related to workplace injuries, we hold that the peripheral nature of the medical bill issue and

plaintiff's unnecessary delay in providing discovery nevertheless provide ample reason to affirm the court's decision.

*Affirmed.*