*Albertine et al. v. Churchview Estates, LLC*, No. 591-5-14 Cncv (Mello, J., Sept. 28, 2016).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| CHRISTOPHER ALBERTINE, et al., <br>  Plaintiffs <br><br> v. <br><br> CHURCHVIEW ESTATES, LLC., <br>  Defendant | Docket No. 591-5-14 Cncv |

RULING ON MOTIONS TO RECONSIDER

This is a dispute between homeowners in a development and the developer. The complaint alleges violations of the Common Interest Ownership Act, 27A V.S.A. § 1-101, *et seq*. (Count I). Specifically, homeowners allege that while it controlled the homeowners' association, the developer failed to call for elections for unit owner representation on the executive board, hold annual meetings of unit owners and submit budgets for ratification, and provide unit owners with notice of executive board meetings. Homeowners also allege failure by the developer to pay assessments on unsold units. In ruling on the parties' motions for summary judgment, the court held that the Common Interest Ownership Act claim was moot to the extent it asserted violations regarding elections, meetings and budgets, and notice of board meetings, because the developer had already ceded control of the association to the unit owners, and the only practical relief requested was injunctive in nature. As to liability for the assessments, the court granted summary judgment for plaintiffs, concluding that the developer must pay assessments on developer-owned vacant lots after the first unit was sold and assessed. Both parties have moved to reconsider the summary judgment ruling in part. Plaintiffs contend the violations which the court held to be moot

are not moot because they are seeking attorney's fees. The developer argues that it is not required to pay assessments on raw, undeveloped lots that it owns. Carl H. Lisman, Esq. and Christina A. Jensen, Esq. represent Plaintiff homeowners. Stefan Ricci, Esq. represents Defendant developer (also referred to as "Declarant"). The court addresses each motion separately below.

## STANDARD

The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Latouche v. N. Country Union High Sch. Dist., 131 F. Supp. 2d 568, 569 (D. Vt. 2001) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995)). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Id. (quoting Shrader, 70 F.3d at 257). At the same time, however, it is well established that "[u]ntil final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order." Kelly v. Town of Barnard, 155 Vt. 296, 307 (1990) (quoting Lindsey v. Dayton–Hudson Corp., 592 F.2d 1118, 1121 (10th Cir.1979)). Such modification is appropriate to prevent the perpetuation of error or a miscarriage of justice, and to allow prompt corrective action. See id.; State Highway Bd. v. Jamac Corp., 131 Vt. 510, 515 (1973).

## PLAINTIFF'S MOTION TO RECONSIDER

Plaintiffs move to reconsider the Court's rulings on mootness in its August 12, 2016 order. Declarant has not responded to that motion.

Upon review of the pleadings, it is apparent that Plaintiffs requested attorney's fees and costs in bringing this action. The Act provides that "[a] declarant, association, unit owner, or any other person subject to this title may bring an action to enforce a right granted or obligation

2

imposed by this title, the declaration, or the bylaws," and that "[t]he court may award reasonable attorney fees and costs." 27A V.S.A. § 4-117(a). A claim for attorney's fees presents a live controversy even where an action would otherwise be moot. *See* Merriam v. AIG Claims Servs., Inc., 2008 VT 8, ¶ 10, 183 Vt. 568 ("Defendant argues, as a threshold matter, that a claim for attorney's fees is insufficient to create a justiciable case or controversy if none exists on the merits of the underlying claim. We decline to adopt that rule today, and agree with plaintiff that the attorney's fees still present a live controversy."); Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 28. Accordingly, the court will reconsider the three claimed violations it ruled moot, with the understanding that the violations could have occurred only prior to the June 21, 2016 voluntary surrender of control over the Association, and that the only available relief for these claims is attorney's fees and costs.

### (1) Election of Unit Owners to Executive Board

Plaintiffs allege that Declarant violated the Act and the Declaration by failing to call for elections for unit owner representation on the executive board. Under the Act and the Declaration, each owner of a unit in Churchview Estates is a mandatory member of the Churchview Estates Homeowners Association, Inc. (the "Association"). The affairs of the Association are managed by the Association's Executive Board.[1] The Act permits the declaration to "provide for a period of declarant control of the association during which a declarant . . . may appoint and remove the officers and members of the executive board." 27A V.S.A. § 3-103(d)(1).[2] The Declaration here does, in fact, provide for such a period of Declarant control. *See* Pl.'s Ex. 1, § 7.9(a). That period of Declarant control continues until:

---

[1] This fact is not supported by the statute Plaintiffs cite, *see* 27A V.S.A. § 3-103(e), but Defendant admitted it in its Answer. *See* Answer ¶ 12.

[2] That statutory subsection is, however, "[s]ubject to subsection (e)," which the court addresses below.

3

(i)      Sixty (60) days after conveyance of all the Units that may be created to Unit Owners other than the Declarant;

(ii)     Two (2) years after the Declarant has ceased to offer Units for sale in the ordinary course of business; [or]

(iii)    The day the Declarant, after giving written notice to the Unit Owners, records an instrument voluntarily surrendering all rights to control the activities of the Association.

Id. § 7.9(a); *see also* 27A V.S.A. § 3-103(d)(1). Plaintiffs assert that as of the date their motion for summary judgment was filed, none of those three events had occurred, but that Declarant disclaimed all responsibility for governance of the Association, such as election of directors. The Act and the Declaration require that at least one director be elected by the members of the Association within 60 days after the sale of one-fourth of the units. 27A V.S.A. § 3-103(e) ("At least one-fourth of the members of the executive board shall be elected by unit owners who are not declarants within 60 days after one-fourth of the created units is conveyed to owners other than a declarant.").[3]

One-fourth of the units had been conveyed upon the fifth sale, on August 31, 2011. Plaintiffs assert that no election of Board members at an Association meeting has ever taken place, that all directors have been appointed by the Declarant, and that the president of the Association has not presided over and is not aware of any election of directors. Plaintiffs further assert that no unit owners have been elected to the Executive Board, and the Declarant has never called a meeting of unit owners for that purpose. Plaintiffs cite admissible evidence supporting their assertions. *See* Herr aff. (Ex. 3), ¶ 7; Lee aff. (Ex. 7), ¶ 4.

---

[3] The Declaration provides similarly:

> Not later than sixty (60) days after conveyance of twenty-five present (25%) of the Units that may be created to Unit Owners other than the Declarant, at least one member and not less than twenty-five percent (25%) of the members of the Executive Board shall be elected by Unit Owners other than the Declarant . . . .

Ex. 1, § 7.9(b).

4

In response, Declarant asserts that it ceded control of the Association to the unit owners back in 2013. Rene Thibault, "the member and operator" of the Declarant and the former president of the Association, Ex. 5 at 3, 26, 35, testified that in 2013 he turned the Association over to the unit owners, including the bank account, and that he is not aware whether they have since voted or elected anybody. They have apparently hired a property management company to run the Association. Therefore, Declarant contends, the unit owners have effectively run the Association since June 2013. *See* Hr'g Tr. (Ex. 5) at 34–38.

Even taking Declarant's assertions as true, they do not demonstrate a disputed fact. Declarant's asserted facts completely ignore the almost two-year period between August 2011 and June 2013 when Declarant undoubtedly retained control of the Association and when no elections were held. Based on the evidence presented, a reasonable jury would have to find that Declarant violated the Act and the Declaration by failing to hold executive board elections prior to June 2013. Consequently, Plaintiffs are entitled to summary judgment as to that claim.

(2) Budgets and Annual Meetings

Plaintiffs next argue that Declarant violated the Act, Declaration, and Bylaws by failing to hold annual meetings of unit owners and to submit budgets for ratification. They assert first that, while in sole control of the Association, Declarant has never noticed or held any meeting of the unit owners. "An association shall hold a meeting of unit owners annually at a time, date, and place stated in or fixed in accordance with the bylaws." 27A V.S.A. § 3-108(a)(1). The association must "notify unit owners of the time, date, and place of each . . . meeting" as well as "the items on the agenda . . . ." Id. § 3-108(a)(3). The Bylaws provide that the annual meeting

> shall be held in the month of June of each year, beginning with the
> year 2010, unless a different time is specifically set forth in the
> notice of meeting with the change in time being duly noted. . . . At
> the annual meeting: (a) The President and Chief Financial Officer

5

shall report on the activities and financial condition of the Corporation; (b) the Members shall consider such other matters as were properly noticed, if required; and (c) Members who have acquired voting rights in accordance with the provisions of section 7.5, shall elect directors.

Bylaws (Ex. 2), § 7.6.

Plaintiffs' assertion that Declarant has never held an annual meeting of the unit owners is supported by record evidence. *See* Herr aff. (Ex. 3), ¶¶ 7–8; Lee aff. (Ex. 7), ¶ 5; Thibault Depo. (Ex. 6) at 18 (admitting that, as president of the association, he never presided over a meeting of the association). Declarant points to Thibault's later (and contradictory) testimony that the association had one annual meeting, which he thought was in June 2012. *See* Hr'g Tr. (Ex. 5) at 34. Declarant also raises the same argument it raised above regarding executive board elections— that it had turned over control of the association to the unit owners in June 2013.

Even assuming that Declarant did hold an annual meeting in 2012 and that it transferred control of the association in 2013, Declarant has not demonstrated a disputed material fact. The Bylaws require an annual meeting in June of each year, "beginning with the year 2010 . . . ." Declarant's purportedly disputed facts offer no explanation for the failure to hold an annual meeting of unit owners in 2010 and 2011. Thus, the undisputed facts establish a patent violation of the Act and the Bylaws due to the failure to hold annual meetings.

Plaintiffs also assert that Declarant has never presented a budget to the unit owners for ratification, or for any purpose. The Declaration requires:

> Within thirty . . . days after the adoption of any proposed budget for the Common Interest Community, the Executive Board shall provide a summary of the budget to all Unit Owners. The Board shall set a date, not less than fourteen . . . or more than thirty . . . days after the date the budget summary is sent to the Unit Owners, for meeting of the unit owners to ratify the budget.

6

Ex. 1 at 17.5. The Act similarly requires that unit owners be permitted to vote on matters including budget ratification. 27A V.S.A. § 3-123(a). While Plaintiffs have offered admissible evidence supporting their assertion that Declarant has never presented a budget for ratification, *see*, *e.g.*, Lee aff. (Ex. 7), ¶ 6; Herr suppl. aff. (Ex. 4), ¶ 7–8, Declarant responded by stating: "Deny that no budget have [sic] been proposed or approved. Admit the rest." Def.'s Statement of Disputed Facts, ¶ 20. Declarant's response includes no citation to evidence. Thus, the court deems Plaintiffs' asserted facts to be admitted. *See* V.R.C.P. 56(c), (e). Because no reasonable jury could find that Declarant did not violate the Act, Declaration, or Bylaws by failing to hold annual meetings and present budgets for ratification based on the undisputed facts, Plaintiffs are entitled to summary judgment on those claims.

### (3) Notice of Executive Board Meetings

Finally, Plaintiffs contend that Declarant has violated the Act by failing to provide unit owners with notice of executive board meetings. "During the period of declarant control, the executive board shall meet at least four times a year." 27A V.S.A. § 3-108(b)(3). Unit owners must be given notice of such meetings. Id. § 3-108(b)(5) ("Unless the meeting is included in a schedule given to the unit owners or the meeting is called to deal with an emergency, the secretary or other officer specified in the bylaws shall give notice of each executive board meeting to each board member and to the unit owners."). Executive board meetings "must be open to the unit owners except during executive sessions." Id. § 3-108(b)(1). At such meetings, the board must provide a "reasonable opportunity for unit owners to comment regarding any matter affecting the common interest community and the association." Id. § 3-108(b)(4).

As the court determined in its prior ruling, it is undisputed that Declarant has never given unit owners notice of any executive board meeting, much less an opportunity to comment at one.

Pls.' Ex. 3 (Herr. aff.) ¶ 9. Declarant has further failed to hold quarterly board meetings. Pls.' Ex. 6 (Thibault depo.) at 18–19. Declarant's "disputed" statement of fact denying these facts is unresponsive and offers to citation to any supporting materials. *See* V.R.C.P. 56(c), (e). As no jury could reasonably find in favor of Declarant, summary judgment is granted for Plaintiffs on the issue of notice of executive board meetings.

DEFENDANT'S MOTION TO RECONSIDER

Declarant moves the court to reconsider its decision granting Plaintiffs' motion for summary judgment on the issue of Declarant's liability for assessments on Declarant-owned property. Declarant contends that the Act does not unambiguously define a "unit" as an improved or unimproved lot, and does not require the "illogical" result where a developer pays assessments for vacant lots for which no services are being used. Declarant claims the Declaration's definition of "unit" is ambiguous, presenting a jury question. If the court still concludes it is unambiguous, Declarant requests an equitable reformation of the Declaration to clarify that "unit" does not include vacant, unimproved lots. Alternatively, Declarant argues, the Act permits assessing undeveloped lots, if at all, only for common expenses that benefit those lots. Plaintiffs, unsurprisingly, insist that the court's initial construction of "unit" was correct.

As the court stated in its previous ruling, the issue turns on the definition of "unit." Declarant does not argue that Declarant-owned units in general cannot be assessed; indeed, that argument would be patently foreclosed by the plain language of the Act. Instead, Declarant argues that the term "unit" as used in the Act and the Declaration includes only lots with completed physical structures, as opposed to raw, undeveloped lots. Thus, Declarant contends, it is not liable for assessments on its units that have not yet been developed.

Under the Act, "[u]nit" means "a physical portion of the common interest community designated for separate ownership or occupancy." 27A V.S.A. § 1-103(30). As the court held in its prior decision, that statutory definition unambiguously refers to lots regardless of whether they contain physical structures or are vacant and undeveloped. As Plaintiffs point out, the definition references not only portions of the community designated for separate *occupancy*, but also those portions designated for separate *ownership*. If "unit" meant only completed structures, the language distinguishing ownership from occupancy would be mere surplusage. Moreover, the term "designated" necessarily refers, at least in part, to some future interest. *See* American Heritage Dictionary (5th ed. 2016) (defining "designate" as "To indicate or specify; point out" or "To select and set aside for a duty, office, or purpose . . . . Appointed but not yet installed in office . . . ."). This clearly contemplates lots that are intended for future ownership or occupancy, but are currently undeveloped. Consequently, pursuant to the Act, all units are to be assessed, and that includes units which consist of raw, vacant land.

There is persuasive authority from other courts, interpreting their jurisdictions' respective statutes, holding that undeveloped units are subject to assessments. *See*, *e.g.*, High Point at Lakewood Condo. Ass'n, Inc. v. Twp. of Lakewood, 442 N.J. Super. 123, 143, 121 A.3d 413, 425–26 (App. Div. 2015) (holding that "phantom" units are subject to assessments, but remanding for consideration of New Jersey statute that specifically provided for lower assessment amounts on unfinished units); Mountain View Condo. Homeowners Ass'n v. Scott, 883 P.2d 453, 457 (Ariz. Ct. App. 1994) (recognizing view that Uniform Condominium Act does not "distinguish between completed and uncompleted units in . . . levying assessments for maintenance, repair and administrative expenses attributable to the common elements"); Hatfield v. La Charmant Home Owners Ass'n, 469 N.E.2d 1218, 1221–22 (Ind. Ct. App. 1984) (rejecting argument that

9

"habitability" must precede assessment); Pilgrim Place Condo. Ass'n v. KRE Props., Inc., 666 A.2d 500, 502 (Me. 1995) (stating "[n]o provision of the Act requires any distinction between built and unbuilt units in the assessment for common expenses"); Bradley v. Mullenix, 763 S.W.2d 272, 275–77 (Mo. Ct. App. 1988) (stating that neither the statute nor the condominium's declaration distinguished between completed and unfinished units, and holding that developer was liable for proportionate share of expenses attributable to unfinished units); Centennial Station Condo. Ass'n v. Schaefer Co. Builders, Inc., 800 A.2d 379, 384 (Pa. Cmwlth. Ct. 2002) (following Mountain View and Pilgrim Place, and holding that developer was liable for fees for units that were declared but nonexistent); *cf.* Rafalowski v. Old Cnty. Rd., Inc., 719 A.2d 84, 87–88 (Conn. Super. Ct. 1997) (permitting a lesser assessment fee for unfinished units), aff'd, 714 A.2d 675, 675–77 (Conn. 1998); *but see* Meghan Coves Ass'n v. Meghan Coves Prop., Inc., 50 P.3d 226, 230–31 (Okla. Civ. App. 2002) (finding that under Oklahoma statutory law, the establishment of a unit requires construction of a unit "rather than an idea expressed on paper").

An Arizona appellate court in Mountain View dealt with a statutory definition of "unit" very similar to that provided in the Vermont Act. 883 P.2d at 457 ("A unit is 'a portion of the condominium designed for separate ownership or occupancy . . . .") (quoting Ariz. Rev. Stat. § 33-1202(22)). The court held there was nothing in the Arizona Uniform Condominium Act or the declaration at issue in that case that distinguished between completed and unfinished units for common expense assessment purposes. Id. "A 'unit' is described in terms of physical boundaries to distinguish between that area which is for the exclusive use of the unit owner and that which is part of the Common Area. . . . The physical description of a unit's boundaries does not contemplate . . . the existence of a physical structure before one becomes a 'unit' owner obligated to pay assessments." Id. at 456.

Similarly, the statutory definition of "unit" in the Maine Condominium Act applicable in Pilgrim Place is identical to our own. *See* Pilgrim Place, 666 A.2d at 502 (citing Me. Rev. Stat. tit. 33, § 1601-103(26)). There, the Maine Supreme Court rejected the developer's reliance on the definition of "unit" as "a *physical* portion of a condominium" as unpersuasive. That court clarified that "[t]he definition is of a physical portion 'designated,' i.e., intended in the future, 'for separate ownership or occupancy.'" Id.

The definition of "unit" in the Declaration also unambiguously includes both improved and unimproved lots. Under the Declaration, a "unit" is "[a] physical portion of the Common Interest Community designated for separate ownership or occupancy, the boundaries of which are described in the Section 4.3 of this declaration. In Churchview Estates, each Unit consists of a Lot as shown on the Plan and any improvement on that Lot." Ex. 1, § 1.26. Like the statutory definition, this definition also refers to a "physical portion . . . designated for separate ownership or occupancy . . . ." Thus, as with the statutory definition, "designated" implies some future intention, while "ownership" must refer to ownership without occupancy. This definition clearly contemplates that a vacant lot may be considered a unit for assessment purposes.

Declarant points to the last sentence of the Declaration's definition, which states that each unit consists of a lot "and any improvement on that Lot." Urging the court to read the word "and" as conjunctive, Declarant contends that a "unit" should be understood to mean "*a lot and improvements*" rather than "a vacant, unimproved lot *or* a lot with improvements." Def.'s Mot. to Reconsider at 3 (Aug. 26, 2016) (emphasis in original). However, as Plaintiffs observe, Declarant's argument is directly thwarted by the Declaration's definition of "Improvements": "Any construction or facilities existing *or to be constructed* on the land included in the Common Interest Community, including but not limited to, buildings, trees and shrubbery planted by the Declarant

11

or the Association, paving, utility wires, pipes and light poles." Decl. § 1.16 (emphasis added). The phrase "or to be constructed" patently means that planned yet currently nonexistent buildings are "improvements" under the Declaration.

Even assuming the definition of "unit" in the Declaration was ambiguous as to whether it included unimproved lots, the statute would not allow such a result. As explained in the court's August 12th decision, while terms defined in the Act may be defined differently in the Declaration and the Bylaws, terms have an "unvarying meaning in the Act, and any restricted practice which depends on the definition of a term is not affected by a changed term in the documents." 27A V.S.A. § 1-103, Uniform Law Cmt. 1. Thus, "[t]he drafter of a declaration or bylaws is always entitled to use whatever words in lieu of defined terms as the drafter chooses, but this Act will override such a usage when a substantive requirement in this Act is avoided in a declaration or in bylaws." Unif. Common Interest Ownership Act (2008), § 1-103, Cmt. 1. The effective result of a narrower definition of "unit" in the Declaration than in the Act would be to avoid the Act's substantive requirement that all units be assessed once one unit is assessed. *See* Hatfield, 469 N.E.2d at 1222 ("The Indiana Horizontal Property Law requires 'co-owners' to pay their proportionate share of the common expenses. A private agreement, in the nature of a contract, could not relieve the developers of this statutorily imposed obligation. Thus, as long as the developers remain 'co-owners,' their units are subject to assessment for common expenses irregardless of the terms of the declaration and bylaws.").

Declarant requests an equitable reformation of the definition of "unit" in the Declaration to prevent "the manifest justice that otherwise results." Def.'s Mot. to Reconsider at 4. "The purpose of reformation is to 'correct mutual mistakes of the parties that have created a result neither party intended.'" Arapaho Owners Ass'n, Inc. v. Alpert, 2015 VT 93, ¶ 22 (quoting Cassani v.

12

Northfield Sav. Bank, 2005 VT 127, ¶ 15, 179 Vt. 204) (trial court acted within its equitable authority in reforming declaration of condominium and its schedule to correct mutual mistake as to number of units in existence and reassigning unit owner's percentage of undivided interest in community). Declarant has not asserted a mutual mistake that has created a result neither party intended. This is not the type of situation where equitable reformation applies. Moreover, reforming the Declaration would serve no practical purpose. The Act would still define "unit" to include vacant lots, and reformation of the statute is a matter solely for the legislature.

Lastly, and alternatively, Declarant contends that pursuant to 27A V.S.A. § 3-115(c)(2), Declarant-owned unimproved lots may be assessed, if at all, only for common expenses that benefited or benefit them. Def.'s Mot. to Reconsider at 4. The cited statutory section provides that: "*To the extent required by the declaration*: . . . a common expense benefiting fewer than all of the units or their owners may be assessed exclusively against the units or unit owners benefited . . . ." 27A V.S.A. §3-115(c)(2) (emphasis added). Declarant points to no provision in the Declaration that requires such an alternative assessment method.

The court observed in two prior rulings in this case that it does seem illogical to charge assessments for undeveloped units which do not benefit from common services to the same extent as finished and occupied units. As one court has stated in response to a developer's similar argument that such an assessment was unreasonable:

> Defendant argues that the conclusion of the trial court, that a "unit" is not a "unit" until completed and capable of occupancy, is proper as it would be unreasonable to assess maintenance, repair and administrative expenses against units which were under construction. We reject this conclusion and defendant's reasoning. Whether a building contains one complete and occupied unit and nine incomplete units or vice versa the grass on the lawn grows to the same length, the snow on the sidewalk accumulates to the same depth, the roof and exterior paint deteriorate at the same rate. Defendant inferentially concedes this issue by recognizing his

13

> responsibility to pay a proportionate share of the cost of building insurance as soon as one unit in each building was sold and occupied.

Bradley v. Mullenix, 763 S.W.2d 272, 275–76 (Mo. Ct. App. 1988). Admittedly, the reasoning in Bradley applies with more force to a traditional condominium complex with multiple units within one building. However, the same principle nonetheless applies here, albeit to a lesser degree. Whether some of the buildings were constructed or not, certain services are required to maintain common areas of the community, including property taxes, lawn maintenance, and snow plowing. When the first unit in such a community is sold, that one person's assessment cannot possibly cover all the common expenses incurred by the community; nor can that one person be expected to pay an increased assessment until other units are sold.

The Common Interest Ownership Act is a uniform law which applies to various types of common interest communities, including condominium communities, as well as communities like Churchview Estates. It must be applied consistently, regardless of whether certain requirements appear to "fit" better with only certain types of communities. For example, imagine applying Declarant's argument to a condominium development, consisting of one building with one finished and occupied unit and 16 unfinished and unoccupied units. Or imagine a common interest community with a common recreation building that is finished, but with only one residential unit finished and occupied. If the annual heating bill for the entire building in either case is $50,000, the one unit owner's assessment of $200 per month would not cover that amount. Insurance premiums are another example. Assessments of the other unfinished units are required to cover those common expenses. While this might lead to a seemingly "illogical" result in certain cases, uniform laws must be applied uniformly. *See* Centennial Station Condo. Ass'n v. Schaefer Co. Builders, 800 A.2d 379, 383–84 (Pa. Commw. Ct. 2002) (rejecting developer's "assert[ion] that it

is not logical to require owners of unbuilt units to pay expenses from which they derive no benefit" and noting that "[u]niform statutes are to be interpreted and construed to effect their general purpose to make uniform the laws of the states that enact them").

More specifically, Declarant claims the result is illogical because it would apparently result in a "windfall" to the association in this particular case, where the actual common expenses for the first few years were less than the amount that would have been collected in assessments from all 17 units. However, it is it not unexpected that a community's expenses will go under-budget from year to year, resulting in excess money in the community's common expense account. Developers should consider this before assessments begin, as the Act itself gives a developer flexibility as to when to start assessing units. *See* 27A V.S.A. § 3-115, Uniform Law Cmt. 1.[4] Although all the common expenses early on might not have benefited the Declarant-owned, nonexistent units, some expenses, including property taxes on common property, remain virtually consistent whether a unit is completed or not. It is certainly equitable to require all unit owners to share in such expenses. Furthermore, as the court specified in its August 12th ruling, summary judgment was granted only on the issue of Declarant's *liability* for assessments. The total amount due was left for trial to determine how much to deduct from the alleged total amount on account of Declarant's asserted past out-of-pocket expenses for plowing and property maintenance.

---

[4] Comment 1 to 27A V.S.A. § 3-115 provides:

> This section contemplates that a declarant might find it advantageous, particularly in the early stages of project development, to pay all of the expenses of the common interest community himself rather than assessing each unit individually. Such a situation might arise, for example, where a declarant owns most of the units in the project and wishes to avoid building the costs of each unit separately and crediting payment to each unit. It might also arise in the case of a declarant who, although willing to assume all expenses of the common interest community, is unwilling to make payments for replacement reserves or for other expenses which he expects will ultimately be part of the association's budget. Subsection (a) grants the declarant such flexibility while at the same time providing that once an assessment is made against any unit, all units, including those owned by the declarant, must be assessed for their full portion of the common expense liability.

<u>Order</u>

Plaintiffs' motion to reconsider is granted, and their motion for summary judgment is consequently granted as to the issues of: (1) election of unit owners to executive board; (2) budgets and annual meetings; and (3) notice of executive board meetings.

Defendant's motion to reconsider is denied.

Dated at Burlington this 28th day of September, 2016.

_____
Robert A. Mello
Superior Court Judge

16